**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

and

CENTRA BANK, INCORPORATED;
BB&T CORPORATION,

No. 08-5172

*Parties-in-Interest,*

v.

JALARAM, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
John Preston Bailey, Chief District Judge.
(3:05-cr-00006-JPB-4)

Argued: December 2, 2009

Decided: April 2, 2010

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Reversed and remanded by published opinion. Judge Motz
wrote the opinion, in which Judge Michael joined. Judge King
wrote an opinion concurring in the judgment.

**COUNSEL**

**ARGUED**: Michael Stein, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellant. Dale P. Kelberman, MILES & STOCKBRIDGE, PC, Baltimore, Maryland, for Appellee. **ON BRIEF:** Sharon L. Potter, United States Attorney, for Appellant. Derek P. Roussillon, MILES & STOCKBRIDGE, PC, Baltimore, Maryland, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The Government appeals the district court's denial of its request for the forfeiture of $358,390.22 in criminal proceeds. The Government sought the proceeds forfeiture from Jalaram, Inc., the owner of a motel and participant in a conspiracy to violate the anti-prostitution provisions of the Mann Act. The district court held that the requested forfeiture would violate the Eighth Amendment's Excessive Fines Clause. For the reasons that follow, we reverse and remand.

I.

This case arises from the prosecution of the conspirators in a prostitution ring known as the Gold Club. In an earlier appeal, we related in some detail the facts underlying this conspiracy. *See United States v. Singh*, 518 F.3d 236, 241-43 (4th Cir. 2008). We set forth here only the facts relevant to the instant case.

The Gold Club ferried prostitutes from several states to Martinsburg, West Virginia, where they served clients at two motels, the Economy Inn and the Scottish Inn. The Gold Club conspiracy operated from 2000 to 2003, employed approxi-

mately fifty prostitutes, and generated over $670,000 in proceeds. *Id.* at 241.

The Scottish Inn, owned by Jalaram, which in turn is owned by Suresh Patel and his wife, played host to the Gold Club for a period of approximately six months from late 2001 through early 2002. During that period, Suresh Patel's brother, Dilipkumar "Dan" Patel, ran the Scottish Inn on a day-to-day basis. Dan Patel lived at the motel and was present there except when he took deposits to the bank, during which time his brother would typically cover for him. *Id.* at 242-43.

Jalaram joined the conspiracy after Susan Powell, the manager/madam of the Gold Club, met with Suresh Patel to discuss using the Scottish Inn, rather than the Economy Inn (which she had been using and which Jalaram does not own), as a site for her "adult entertainment company." Suresh Patel asked Powell to meet with Dan Patel the following day, and the two reached an agreement. *Id.* at 242.

Under the terms of that agreement, Dan Patel provided a room at the Scottish Inn to each prostitute working on a given day, often forgoing the Scottish Inn's usual requirement that guests fill out registration cards. The prostitutes waited in the motel room for clients. Powell coordinated appointments and checked on her employees by using the motel switchboard. On days when the prostitutes saw at least one customer, they paid a room rental fee of $40 to Dan Patel. On days when the prostitutes did not serve any clients, Dan Patel waived the fee. At night, the prostitutes relinquished their rooms to the motel, which re-rented the accommodations to travelers. *Id.* at 241-42.

After the Gold Club had operated at the Scottish Inn for approximately six months, some of the prostitutes reported dissatisfaction and expressed a desire to return to the Economy Inn. For this reason, during a short period, the Gold Club operated at both motels concurrently. While the Scottish Inn

hosted the prostitutes, their activities generated approximately $385,000 in proceeds.[1] Subsequently, Powell moved the entire Gold Club back to the Economy Inn and operated there until the police arrested her in 2003. *Id.* at 243. Powell pled guilty to a tax offense and cooperated with the Government's investigation. *Id.* at 241.

A federal grand jury returned a fourteen-count indictment charging Suresh Patel, Dan Patel, Jalaram, and other Gold Club conspirators with violations of the Mann Act and money laundering. One count also sought from the conspirators forfeiture of the Economy Inn and the Scottish Inn, plus more than $670,000 in gross proceeds from the conspiracy. *Id.* at 243-44.

After a six-day trial, the jury acquitted Suresh Patel but returned a guilty verdict against Dan Patel, Jalaram, and the other conspirators. The jury found Jalaram guilty of one count of conspiracy to commit an offense against the United States by violation of the Mann Act, five counts of conspiracy to induce an individual to travel in interstate commerce to engage in prostitution, one count of conspiracy to commit money laundering, and one count of money laundering. Moreover, in a special interrogatory the jury found both motels, as well as the Gold Club's total proceeds ($670,072.36), subject to forfeiture. *Id.* at 240, 244.

The district court vacated all of the money laundering convictions for insufficiency of evidence. *Id.* at 244. Then, concluding that it had erred in its jury instructions concerning corporate liability, the district court set aside Jalaram's other convictions and ordered a new trial on those charges. *Id.* at

---

[1]Jalaram received from the Gold Club operations a minimum of $700, the amount paid by prostitutes on days when they completed registration cards. As Jalaram concedes, however, registration was uncommon, and Jalaram therefore almost certainly received more than $700. *See Singh*, 518 F.3d at 243 n.5.

245. The Government appealed and we reversed, holding that the district court improperly vacated the money laundering convictions and incorrectly found its jury instructions inadequate. *Id.* at 248-51. Thus, we reinstated the jury verdict against Jalaram on all counts and remanded for sentencing. *Id.* at 255-56.

On remand, the Government sought to enforce the jury finding and obtain from Jalaram forfeiture of the Scottish Inn as a facilitating property in the conspiracy. In lieu of this forfeiture, Jalaram agreed to pay the United States $350,000. The Government also sought to enforce the jury finding that the conspirators, including Jalaram, were jointly and severally liable for the forfeiture of $670,072.36 in gross proceeds of the conspiracy. From Jalaram, the Government sought only the proceeds generated during the six months that the Scottish Inn participated in the conspiracy, which Jalaram conceded totaled $385,390.22.

The district subjected the requested proceeds forfeiture to an Eighth Amendment Excessive Fines Clause analysis, found that it would be grossly disproportional to Jalaram's crime, and denied the Government's request. The Government timely noted this appeal.

## II.

The forfeiture provision at issue states that any person convicted of violating or conspiring to violate the Mann Act

> shall forfeit to the United States such person's interest in . . .

> (2) any property, real or personal, constituting or traceable to gross profits or other *proceeds obtained* from such offense; and

> (3) any property, real or personal, used or intended
> to be *used to commit* or to promote the commission
> of such offense.

18 U.S.C. § 2253(a) (2000) (amended 2006) (emphases added).[2]
In this case, in addition to now-satisfied forfeiture of the Scottish Inn as a *facilitating* property pursuant to § 2253(a)(*3*), the Government also sought from Jalaram forfeiture of $385,390.22 in *proceeds* of the conspiracy pursuant to § 2253(a)(*2*).

The Government sought the forfeiture of these proceeds as part of Jalaram's criminal sentence. Conspirators "are responsible at sentencing for co-conspirators' reasonably foreseeable acts and omissions . . . in furtherance of the jointly undertaken criminal activity." *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996) (alteration in original) (internal quotation marks omitted). We have therefore held conspirators jointly and severally liable for the forfeiture of proceeds from a conspiracy. *See id.*

The Gold Club conspiracy received $670,072.36 in proceeds from 2000 to 2003. The conspiracy generated $385,390.22 during the period of Jalaram's participation. Dan Patel personally forfeited $27,000 of the $385,390.22, and so the Government now seeks from Jalaram a forfeiture of $358,390.22 in proceeds. Jalaram contends, as it did before the district court, that such a forfeiture violates the Eighth Amendment prohibition on "excessive fines."[3]

---

[2]Congress subsequently amended the Mann Act so that a different forfeiture provision applies to violations today. *See* 18 U.S.C. § 2428 (2006). That amendment has no effect on this appeal. *See Singh*, 518 F.3d at 244 n.11.

[3]Relying on *Rita v. United States*, 551 U.S. 338 (2007), and its progeny, Jalaram also suggests that, in any event, we must uphold as "reasonable" the district court's refusal to order the forfeiture. These cases do not assist Jalaram because a sentencing court does not have discretion to ignore a

The Eighth Amendment dictates that "[e]xcessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII (emphasis added). Application of the Excessive Fines Clause presents a question of law that we review *de novo. United States v. Bajakajian*, 524 U.S. 321, 336 & n.10 (1998).

The Supreme Court has held "that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334. Thus, a forfeiture violates the Excessive Fines Clause only if it is (1) punitive, and (2) grossly disproportional to the gravity of the defendant's offense.

In this case, the Government argues at length that the forfeiture at issue here—an *in personam* criminal forfeiture of proceeds—by definition never meets the first criterion, i.e., is never punitive, and therefore is never subject to examination under the second criterion, proportionality. The Government also briefly contends that, if punitive and so subject to proportionality review, this proceeds forfeiture would survive such an analysis.

Although we reject the Government's principal argument, we agree that the statutorily required forfeiture here is not grossly disproportional to the gravity of Jalaram's offense.

### III.

The Government maintains that the Excessive Fines Clause does not apply to forfeitures of proceeds because such forfei-

---

statutory forfeiture provision. *See United States v. Monsanto*, 491 U.S. 600, 607 (1989) (reasoning that "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory" than the phrase "shall forfeit"). Unless the Constitution bars the forfeiture, the district court must impose it.

tures can never be "punitive." Contrary to the Government's contention, we have never so held.[4] Moreover, three Supreme Court precedents, largely slighted by the Government, require us now to conclude that the forfeiture of criminal proceeds does indeed constitute punishment to which the Excessive Fines Clause applies.

In *Austin v. United States*, 509 U.S. 602, 604-05 (1993), the Government sought *in rem* civil forfeiture of "guilty property" —a mobile home and an auto body shop—used during drug offenses. Although in the case at hand the Government all but ignores *Austin*, there, as here, the Government attempted to categorize an entire class of forfeitures as remedial rather than punitive, and therefore exempt from Excessive Fines scrutiny. Specifically, the Government contended, and the lower courts held, that civil forfeitures, unlike criminal forfeitures, do not constitute punishment because civil forfeitures serve a "remedial" purpose. *See id.* at 605-06, 610.

The Supreme Court flatly rejected the Government's argument. The Court explained that even "a civil sanction," that does not "*solely*" serve a remedial purpose, but also "serv[es] either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 610 (internal quota-

---

[4]We have addressed this subject only in dicta or unpublished opinions. And even in these nonbinding utterances, we have come to conflicting conclusions. *Compare United States v. Borromeo*, 1 F.3d 219, 221 (4th Cir. 1993) (stating in dicta that the forfeiture of proceeds "may, in a given case" be subject to the Excessive Fines Clause), *and United States v. Shifflett*, No. 93-5693, 1995 WL 125506, at *2 (4th Cir. Mar. 23, 1995) (unpublished) (concluding that the Excessive Fines Clause applies to the forfeiture of proceeds), *with United States v. Wild*, 47 F.3d 669, 676 (4th Cir. 1995) (stating in dicta that the forfeiture of proceeds "can never be 'excessive' in a constitutional sense"), *and United States v. Powell*, 2 F. App'x 290, 294 (4th Cir. 2001) (unpublished) (concluding that the forfeiture of proceeds can never be disproportional). The Government repeatedly and erroneously asserts that the statement in *Wild* constitutes a holding; it does not because in *Wild* the Government did not seek the forfeiture of proceeds.

tion marks omitted) (emphasis added). Because the civil forfeiture statute in *Austin* targeted those convicted of crimes and sought to deter future offenses, the Court held that, at least in part, the forfeiture "constitute[d] payment to a sovereign as punishment for some offense, and, as such, [was] subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Id.* at 622 (internal quotation marks and citation omitted). Accordingly, the Supreme Court reversed and remanded for a determination of whether the challenged civil forfeiture was unconstitutionally excessive. *Id.* at 604.

On the same day that the Court decided *Austin*, it issued its opinion in *Alexander v. United States*, 509 U.S. 544 (1993). A jury convicted Alexander of RICO violations for trafficking in obscenity, and the Government sought forfeiture of numerous assets, including the "*proceeds* [he] obtained from his racketeering offenses." *Id.* at 547, 548 (emphasis added).[5] The lower courts enforced the forfeiture order without much discussion of the Eighth Amendment issue. *Id.* at 548-49.

Before the Supreme Court, the Government suggested that the forfeiture of criminal proceeds would always pass constitutional muster because "however severe" such forfeiture may be, "a person who has . . . acquired property with the proceeds of illegal activity has, at the very least, a vastly reduced moral claim to the continued use or enjoyment of such property or its fruits." Br. of U.S. at 39-40 in *Alexander v. United States*, 509 U.S. 544 (1993), *available at* 1992 WL 511952. Rejecting this apparent effort to shield all proceeds forfeitures from proportionality review, the Supreme Court concluded that the entire forfeiture, including the forfeiture of proceeds, was "clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine,'" and so subject to analysis under the Excessive Fines Clause. *Alex-*

---

[5]In the case at hand, the Government erroneously contends that "*Alexander v. U.S.*, 509 U.S. 544, 559 (1993) . . . [did] not involve the forfeiture of proceeds." *See* Government's Br. at 19.

*ander*, 509 U.S. at 558-59. Indeed, the Court noted that "[u]nlike *Austin*, this case involves *in personam* criminal forfeiture not *in rem* civil forfeiture, so there was no threshold question concerning the applicability of the Eighth Amendment." *Id.* at 559 n.4. Accordingly, the Court again reversed and remanded for a determination of whether the contested forfeiture (including the forfeiture of proceeds) was unconstitutionally excessive. *See id.* at 559.[6]

Five years later, in *Bajakajian*, the Government once more attempted (and failed) to convince the Supreme Court that a forfeiture did not constitute punishment. *See* 524 U.S. 321. The respondent there failed to report $357,144 that he attempted to carry out of the country in violation of federal law requiring any person transporting more than $10,000 to declare the sum. *Id.* at 325. The forfeiture provision authorized forfeiture of "any property . . . involved in such offense." 18 U.S.C. § 982(a)(1) (1994). The Government sought forfeiture of the entire $357,144 as part of the respondent's criminal sentence. The district court held that such a forfeiture would violate the Excessive Fines Clause, and instead imposed a $15,000 forfeiture; the Ninth Circuit affirmed. *Id.* at 326-27.

The Government urged the Supreme Court to reverse, contending that the statutory forfeiture was not subject to Excessive Fines analysis because the currency in question was "guilty property" whose forfeiture was "remedial" rather than punitive. *Id.* at 329-30. The Supreme Court, however, had "little trouble" rejecting this argument and "concluding that

---

[6]On remand, the Eighth Circuit afforded no significance to the fact that the Supreme Court had remanded the forfeiture of proceeds, like the other forfeited property, for Excessive Fines analysis. Instead, the appellate court held that "[f]orfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity." *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994). This does not seem to us to comply with the Supreme Court's remand order.

the forfeiture . . . constitute[d] punishment" because it was "imposed at the culmination of a criminal proceeding[,] . . . require[d] conviction of an underlying felony, and . . . [could] be imposed . . . only upon a person who has himself been convicted" of the crime. *Id.* at 328.

Of particular note here, the *Bajakajian* Court rejected the Government's argument that the currency in question was subject to nonpunitive forfeiture because it was an "instrumentality" of the crime, a class of property historically exempt from Excessive Fines analysis. The Court recognized that "[i]nstrumentalities historically have been treated as a form of 'guilty property' that can be forfeited in civil *in rem* proceedings" without triggering Excessive Fines scrutiny. *Id.* at 333. The Court went on to hold, however, that when the Government seeks "to punish [a defendant] by proceeding against him criminally, *in personam*, rather than proceeding *in rem* against the currency," it is "irrelevant whether [the defendant]'s currency is an instrumentality; the forfeiture is punitive, and the test for the excessiveness of a punitive forfeiture involves solely a proportionality determination." *Id.* at 333-34.

In *Austin*, *Alexander*, and *Bajakajian*, every member of the Supreme Court agreed, over the Government's objections, that the challenged forfeitures constituted punishment subject to proportionality analysis under the Excessive Fines Clause. In each case, the Government argued that forfeiture of a certain *type of property*—whether the civil forfeiture of guilty property in *Austin*, the criminal forfeiture of racketeering proceeds in *Alexander*, or the criminal forfeiture of instrumentalities in *Bajakajian*—merited a special exception from the Excessive Fines Clause. In each case, the Court rejected the Government's view and reaffirmed that the *type of property* at issue was irrelevant to the issue of whether the forfeiture constituted punishment. Instead, the Court consistently focused on whether the forfeiture stemmed, at least in part, from the property owner's criminal culpability. If so, the for-

feiture does constitute punishment and so is subject to proportionality review under the Excessive Fines Clause.

The Supreme Court's Excessive Fines Clause cases thus require us to reject the Government's argument that forfeiture of a particular type of property—here the proceeds of a criminal conspiracy—is, by definition, nonpunitive. Instead, we look to whether the challenged forfeiture resulted at least in part from the criminal activity of the property owner, Jalaram. In answering that question, we examine whether the forfeiture was "imposed at the culmination of a criminal proceeding," "requires conviction of an underlying felony," and "cannot be imposed upon an innocent [person] . . . but only upon a person who has himself been convicted of a" crime. *Id.* at 328.

The forfeiture here meets all of these requirements. The Mann Act provision mandates forfeiture at "the culmination of a criminal proceeding"—sentencing following a six-day trial. Moreover, like the statute in *Bajakajian*, the statute at issue here requires forfeiture only after a person is "convicted" of the underlying felony. *See* 18 U.S.C. § 2253(a) (2000) (amended 2006). Also like the statute in *Bajakajian*, the provision here includes a defense that allows innocent third parties to defeat forfeiture. *See id.* § 2253(b). Moreover, and again as in *Bajakajian*, the challenged forfeiture does not appear "remedial" because the "forfeiture of the currency . . . does not serve the remedial purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 329. For these reasons, we hold that the Excessive Fines Clause applies to the forfeiture of proceeds challenged in this case.

In doing so, we recognize that in most cases, courts ultimately will find a forfeiture of proceeds not grossly disproportional to the offense. In a case involving a single offender, it would be very difficult, and perhaps impossible, for the defendant to show that the forfeiture of proceeds was grossly disproportional to the gravity of his offense. Thus, we can understand the desire of some of our sister circuits to simplify

the analysis by holding such forfeitures exempt from constitutional scrutiny in the first instance.[7]

However, the Government's proposed shortcut may work a grave injustice in cases involving joint and several liability. In such cases, some defendants inevitably disgorge more money than they received from the conspiracy, thus forfeiting property that they obtained lawfully in order to satisfy the forfeiture judgment. In a case where a defendant played a truly minor role in a conspiracy that generated vast proceeds, joint and several liability for those proceeds might result in a forfeiture order grossly disproportional to the individual defendant's offense. Yet, if we adopt the rule advanced by the Government, those defendants would be unable to obtain relief. Such a holding would grant the Government a license to "abuse . . . its 'prosecutorial' power," and thus undermine the "primary focus of the Eighth Amendment." *Browning-*

---

[7]In an attempt to avoid the force of the Supreme Court's forfeiture cases, the Government asserts that "every . . . circuit that has addressed the issue has held that the forfeiture of property constituting . . . proceeds of an alleged illegal activity can *never* be excessive in a constitutional sense." Government's Br. at 17 (internal quotation marks omitted). This claim is simply false. *See, e.g.*, *United States v. Browne*, 505 F.3d 1229, 1281-82 (11th Cir. 2007) (holding that the forfeiture of racketeering proceeds constitutes punishment); *United States v. Corrado*, 227 F.3d 543, 552 (6th Cir. 2000) (recognizing that "[t]hough the [RICO] statute appears to require total forfeiture of illegal proceeds, courts can reduce the forfeiture to make it proportional to the seriousness of the offense so as not to violate the Eighth Amendment prohibition against . . . 'excessive fines'"); *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir.), *amended on denial of reh'g* 172 F.3d 689 (1999) (holding that the forfeiture of proceeds from false loan applications constitutes punishment). Indeed, only two of the cases that the Government cites were decided after *Bajakajian*. One does not attempt to distinguish or even mention *Bajakajian*. *See United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860 (9th Cir. 2001). The other addresses *Bajakajian* in a footnote, stating only that "*Bajakajian* . . . did not involve drugs, contraband, or proceeds thereof." *United States v. Betancourt*, 422 F.3d 240, 250 n.5 (5th Cir. 2005). The court never explains why that distinction matters, and of course, it does not.

*Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 266 (1989).[8] While we recognize the appeal of a streamlined analysis, we cannot engage in one at the expense of constitutional rights.

## IV.

Having held that the Excessive Fines Clause applies, we must determine whether the statutory forfeiture challenged here is "grossly disproportional to the gravity of [Jalaram's] offense." *Bajakajian*, 524 U.S. at 324.

In *Bajakajian*, the Supreme Court weighed a number of factors to determine whether the forfeiture was grossly disproportional to the charged offense. The Court considered (1) the amount of the forfeiture and its relationship to the authorized penalty (a $357,144 forfeiture for a crime subject to a $5000 maximum fine); (2) the nature and extent of the criminal activity (a single reporting offense); (3) the relationship between the crime charged and other crimes (none); and (4) the harm caused by the charged crime (again none). *Id.* at 337-39.

In the years since *Bajakajian*, we have looked to these same factors to assess the proportionality of challenged forfeitures. In *United States v. Bollin*, 264 F.3d 391, 417-18 (4th Cir. 2001), we found the forfeiture of $1.2 million not excessive because the offense—a conspiracy to commit securities fraud—carried significant criminal penalties, spanned a long period of time, was connected to other crimes including

---

[8]Our friend in concurrence seems to suggest that our holding in *McHan*, 101 F.3d at 1043, requires a court to ignore the individual role played by a conspirator when ordering forfeiture of proceeds. True, *McHan* establishes, as a matter of *statutory* construction, that a forfeiture statute imposed joint and several liability on all members of a given conspiracy. But in *McHan*, no party suggested, and we did not hold, that every forfeiture of proceeds compelled by a statute would pass *constitutional* muster under the Eighth Amendment.

money laundering, and bilked investors out of substantial sums of money. Similarly, in *United States v. Ahmad*, 213 F.3d 805, 817 (4th Cir. 2000), although the statute and Sentencing Guidelines authorized penalties that "mirror[ed] those in *Bajakajian*," we held the forfeiture of $101,587.42 not excessive because the defendant's "conduct . . . was not a single, isolated untruth affecting only the government, but rather a series of sophisticated commercial transactions over a period of years that were related to a customs fraud scheme."

As in *Bollin* and *Ahmad*, application of the *Bajakajian* factors here leads us to conclude that the requested forfeiture would not be excessive. Although the Government has not identified any victims who suffered harm from Jalaram's offense, all of the other factors suggest that Jalaram's crimes warrant serious punishment. Like the offenses in *Bollin* and *Ahmad*, and unlike the offense in *Bajakajian*, the criminal activity here generated hundreds of thousands of dollars in illicit revenues. Like the offenses in *Bollin* and *Ahmad*, and unlike that in *Bajakajian*, the criminal activity here spanned several months. And like the offenses in *Bollin* and *Ahmad*, and unlike that in *Bajakajian*, the crimes charged against Jalaram—prostitution and money laundering—were connected with other offenses, i.e., similar crimes at the Economy Inn and systematic tax evasion (the charge for which Susan Powell pled guilty).

Furthermore, also unlike the offense in *Bajakajian*, which carried a maximum fine of $5000, Jalaram's offense renders it liable for a fine of up to $350,000. *See* United States Sentencing Guidelines Manual ("U.S.S.G.") §§ 8C2.4, 8C2.6, 8C2.7(b) (2008). Such punishment does not suggest "a minimal level of culpability." *Bajakajian*, 524 U.S. at 339. In sum, application of the *Bajakajian* factors indicates that Congress considers crimes like Jalaram's far more serious than the reporting offense in *Bajakajian*, and that Jalaram must clear a significantly higher hurdle to show that the requested forfeiture is grossly disproportional to the gravity of its offense.

Jalaram urges us to consider that it received only a small amount of money from the conspiracy. Jalaram's individual role in the conspiracy is certainly relevant to the gravity of its offense. *See Bajakajian*, 524 U.S. at 339 n.14. However, the fact that Jalaram may have received only a small share of the proceeds, in and of itself, does not demonstrate that it played a minor role in the conspiracy. That fact establishes only that Jalaram's participation in the conspiracy was not lucrative; it does not speak to Jalaram's level of culpability.

In fact, although Jalaram may have received only a small share of the proceeds, it played a significant role in the conspiracy. The Gold Club operated in the Scottish Inn—Jalaram's property—for six months, during which the conspiracy generated over $385,000 in revenues. Dan Patel—Jalaram's agent—actively furthered the daily activities of the Gold Club during that entire period by collecting rental payments, assigning rooms, and waiving registration requirements. Susan Powell—the head of the conspiracy—used the motel's switchboard to supervise the prostitutes during the day. Far from being a minor player, Jalaram stood at the heart of the conspiracy's day-to-day operations for a six-month period.[9]

Because Jalaram's offense was serious and its individual culpability significant, it cannot meet its burden of showing that the forfeiture in this case would be "grossly disproportional" to the gravity of its offense. Therefore, even though we hold that the forfeiture of criminal proceeds is punitive and so subject to scrutiny under the Eighth Amendment's Excessive Fines Clause, the district court erred in finding that

---

[9]Jalaram's $350,000 settlement in lieu of forfeiting the Scottish Inn does not, as Jalaram contends, render the total forfeiture "grossly disproportional." Rather, the seriousness of Jalaram's offense and its central involvement in the conspiracy support imposition even of this combined fine. *Cf. Bollin*, 264 F.3d at 418 (upholding a $1.2 million forfeiture as punishment for a serious offense that carried a maximum fine of $500,000).

the required forfeiture in this case would violate the Constitution. We remand for the district court to resentence Jalaram and determine the amount of proceeds reasonably foreseeable to it and therefore subject to forfeiture under 18 U.S.C. § 2253(a)(2).

V.

For all of these reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

KING, Circuit Judge, concurring in the judgment:

With all due respect to my distinguished colleagues in the panel majority, I write separately to concur — on a different basis — in the judgment of reversal. In my view, the Government's request for forfeiture of the proceeds obtained by the Mann Act conspiracy did not implicate the Excessive Fines Clause of the Eighth Amendment. Thus, I would join the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits in ruling that the purely remedial nature of proceeds forfeiture distinguishes it from the punitive "fines" that are subject to the Excessive Fines Clause, and I would not reach the merits of Jalaram's constitutional challenge.

As I read its decisions, the Supreme Court has never decided whether the Excessive Fines Clause applies to the forfeiture of criminal proceeds. *See, e.g.*, *United States v. Bajakajian*, 524 U.S. 321, 328 (1998); *Austin v. United States*, 509 U.S. 602, 610 (1993). According to the panel majority, however, the Court decided this issue in *Alexander v. United States*, where it remanded an order of various types of forfeiture, including the forfeiture of criminal proceeds, to the Eighth Circuit. *See* 509 U.S. 544, 558-59 (1993). Yet, if the Court had actually ruled on whether the forfeiture of proceeds

implicates the Excessive Fines Clause, the majority's analysis of this issue would be far more circumscribed. The majority must go the long route, however, because the Supreme Court has never answered this question. Instead, the *Alexander* Court merely faulted the Eighth Circuit for lumping together Alexander's Eighth Amendment challenge to his *sentence* (under the Cruel and Unusual Punishments Clause) and his *forfeiture* challenge (under the Excessive Fines Clause). *See id.* at 558. To remedy that defect, the Court remanded the forfeiture order so that the Eighth Circuit could conduct the Excessive Fines Clause analysis in the first instance. *See id.* On remand, that court reached the simple conclusion that I advance today: "Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of criminal activity." *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994); *see also Austin*, 509 U.S. at 622 n.14 ("[A] fine that serves purely remedial purposes cannot be considered 'excessive' in any event.").

Several other of our sister courts of appeals have similarly concluded that the forfeiture of proceeds can *never* be excessive under the Excessive Fines Clause. *See, e.g.*, *United States v. Betancourt*, 422 F.3d 240, 250 (5th Cir. 2005) ("[T]he Eighth Amendment does not apply."); *United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 874-75 (9th Cir. 2001) ("Because criminal proceeds represent the paradigmatic example of 'guilty property,' the forfeiture of which has been traditionally regarded as non-punitive, we follow the Seventh, Eighth, and Tenth Circuits and hold that the excessive fines clause of the Eighth Amendment does not apply . . . ."); *United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1395 (10th Cir. 1997) (holding as matter of law that criminal proceeds forfeiture "can never be constitutionally excessive"); *Smith v. United States*, 76 F.3d 879, 882 (7th Cir. 1996)

(holding that forfeiture of proceeds "can hardly be termed punishment").[1]

The majority today departs from these authorities and rules that the forfeiture of criminal proceeds must comply with the Excessive Fines Clause. It justifies this departure by clinging to two propositions that I deem incorrect. First, the majority states that the challenged forfeiture here "does not appear 'remedial,'" because it does not serve the remedial purpose of compensating the Government for a loss. *Ante* at 12. The majority offers no support for this conclusion, nor does any exist. The Seventh Circuit, for example, has persuasively described how the forfeiture of criminal proceeds is "remedial":

> [A]lthough in *Austin* the Court considered the forfeiture of property used to *facilitate* the drug trade under [21 U.S.C.] § 881(a)(4) and (a)(7), defendants such as Smith have claimed that the reasoning applies as well to items forfeited under § 881(a)(6) as *proceeds* of drug transactions. The claim is that "proceeds" forfeitures constitute punishment if they are out of proportion to the government's or society's loss. Can this be so? No.
>
> The reason the answer is "no" is that proceeds forfeitures can never be out of proportion to the "loss" suffered by the government or society. . . .

---

[1]The majority criticizes the Fifth Circuit's *Betancourt* decision (asserting that it unfairly distinguished *Bajakajian*), and the Ninth Circuit's opinion in *Real Property Located at 22 Santa Barbara Drive* (because it never discussed *Bajakajian*). *See ante* at 13 n.7. That criticism, in my view, is unwarranted. The Fifth Circuit in *Betancourt* merely noted that *Bajakajian* shed no light on whether the forfeiture of proceeds implicated the Excessive Fines Clause, and followed the multiple authorities cited above in concluding that it did not. And the Ninth Circuit's opinion cited and discussed *Bajakajian's* predecessor decision, *Austin*, in which the Supreme Court laid out the same analysis conducted in *Bajakajian*.

That being the case, the forfeiture of proceeds acquired from drug dealing can hardly be termed punishment. Forfeitures of drug proceeds have been analogized to the seizure of proceeds from the robbery of a bank. The money is not rightfully the robbers', and its seizure "merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme." *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir. 1994), *cert. denied*, 513 U.S. 1015 (1994). Or put another way by another court:

> Not only are drug proceeds inherently proportional to the damages caused by the illegal activity . . . but also one never acquires a property right to proceeds, which include not only cash but also property secured with the proceeds of illegal activity. . . . [F]orfeiture of drug proceeds is not punishment, but is remedial in nature.

*United States v. Salinas*, 65 F.3d 551, 554 (6th Cir. 1995).

*Smith*, 76 F.3d at 882. The majority offers no response to this compelling analysis.

Second, the majority supports its extension of the reach of the Excessive Fines Clause by highlighting the supposed inequities that could result when the Government seeks to forfeit proceeds from a small player in a large and lucrative criminal conspiracy. *See ante* at 12-14. But, as the majority acknowledges, the law in this Circuit is that coconspirators are jointly and severally liable for the reasonably foreseeable proceeds obtained by the conspiracy, regardless of the individual coconspirator's share therein. *See ante* at 6 (citing *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996)). This principle is well established, for "[i]t would be absurd to treat

[the proceeds of a criminal conspiracy] more leniently than the law treats a lawful partnership, all of whose members are severally as well as jointly liable for the partnership's debts." *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005).

In outlining the inequities that could possibly result, the majority disregards the principle of joint and several liability. *See ante* at 13 ("In a case where a defendant played a truly minor role in a conspiracy that generated vast proceeds, joint and several liability for those proceeds might result in a forfeiture order grossly disproportional *to the individual defendant's offense*." (emphasis added)). The problem is that the "individual defendant's offense" is not part of our forfeiture analysis in the context of a conspiracy. *See McHan*, 101 F.3d at 1043. The relevant individual defendant's offense here is the conspiracy itself. And the proceeds subject to forfeiture are the proceeds obtained by the conspiracy, with every member thereof on the hook for the reasonably foreseeable proceeds obtained by the conspiracy. Simply put, under our precedent, a forfeiture analysis does not turn on the individual role played by Jalaram (or any other conspirator) in a criminal conspiracy.[2]

In short, I would not split from the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits on the question of whether the forfeiture of criminal proceeds implicates the Excessive Fines Clause of the Eighth Amendment.[3] Like those courts, I

---

[2]Contrary to the majority's characterization, *see ante* at 14 n.8, I do not see our *McHan* decision as having anything to do with the constitutionality of holding coconspirators jointly and severally liable for the forfeiture of criminal proceeds. Rather, *McHan* stands for the proposition that Jalaram is jointly and severally liable — under the proceeds forfeiture statute at issue in this appeal — for the reasonably foreseeable proceeds of the Mann Act conspiracy. In light of this precedent, I am unable to agree with the focus, as part of the majority's constitutional analysis, on the individual role played by Jalaram in the conspiracy.

[3]The majority points to three appellate decisions ruling that proceeds forfeiture is subject to the Excessive Fines Clause. *See ante* at 13 n.7. The

believe that the forfeiture of such proceeds is purely remedial, and thus not a "fine" for purposes of the Excessive Fines Clause. For that reason alone, I would reverse the district court's ruling that the Government's forfeiture request contravened the Eighth Amendment.

Pursuant to the foregoing, I would reach the same result as the majority, but on a different basis. I therefore concur in the judgment of reversal.

---

Eleventh Circuit and Sixth Circuit decisions contain nothing more than a passing observation that the forfeiture sought by the Government was subject to the Excessive Fines Clause. *United States v. Browne*, 505 F.3d 1229, 1281-82 (11th Cir. 2007); *United States v. Corrado*, 227 F.3d 543, 552 (6th Cir. 2000). And the third, decided by the Ninth Circuit, offers no refutation (or even discussion) of the contrary authorities discussed above. *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999). As such, these authorities do not condone the majority's classification of the forfeiture of proceeds as "punitive," as opposed to "remedial," and they do not sanction its concern with the fairness of holding individual conspirators liable for a conspiracy's proceeds.