**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1633**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

$134,750 U.S. Currency,

              Defendant – Appellant,

AMANUEL ASEFAW,

              Claimant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (8:09-cv-01513-RWT)

Submitted:  May 15, 2013              Decided:  July 24, 2013

Before NIEMEYER, GREGORY and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Shedd joined.

S. Ricardo Narvaiz, LAW OFFICES OF S. RICARDO NARVAIZ, Silver Spring, Maryland, for Appellants.  Rod J. Rosenstein, United States Attorney, Baltimore, Maryland; Christen A. Sproule, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

In this civil in rem action, claimant Amanuel Asefaw appeals the district court's order of forfeiture, entered after a jury trial, of the defendant funds, $134,750 in United States currency. The jury found that the funds were involved in or traceable to financial transactions structured for the purpose of evading a financial institution's reporting requirements, in violation of 31 U.S.C. § 5324 (2006). Asefaw argues that there was insufficient evidence to support the jury's verdict; that the district court committed error in various evidentiary rulings; and that the forfeiture is unconstitutionally excessive under the Eighth Amendment. Finding no reversible error, we affirm.

I.

Under the Currency and Foreign Transactions Reporting Act of 1970 ("Bank Secrecy Act"), and regulations promulgated by the Financial Crimes Enforcement Network, Department of the Treasury, financial institutions are required to file reports whenever they are involved in cash transactions of more than $10,000. 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311 (2012).[1] A report also must be filed for multiple transactions in a single

---

[1] During the relevant time period, this provision was located at 31 C.F.R. § 103.22(b)(1) (2007).

business day that total more than $10,000, as long as the bank has knowledge that the transactions are by or on behalf of the same person. 31 C.F.R. § 1010.313(b).[2] It is a violation of federal law for any person "to structure . . . any transaction with one or more domestic financial institutions" for the purpose of evading the reporting requirements. 31 U.S.C. § 5324(a)(3). Any property involved in or traceable to illegal structuring is subject to criminal and civil forfeiture to the United States. Id. § 5317(c).

On March 28, 2008, the United States seized, pursuant to a seizure warrant, $114,750 from an account Asefaw held with Citibank and $20,000 from an account he held with Chevy Chase Bank. The government later filed a verified complaint alleging that the defendant funds were traceable to structuring to avoid currency reporting requirements in violation of 31 U.S.C. § 5324(a)(3), and seeking civil forfeiture under § 5317(c) and 18 U.S.C. § 981. Asefaw filed a claim to the defendant funds.

At trial, the government's evidence showed that between March 28 and April 4, 2007, in six business days, Asefaw made eighteen separate cash deposits totaling $142,950, visiting at least six different bank branches at three different banks and

_____

[2] This provision was previously located at 31 C.F.R. § 103.22(c)(2)(2007).

3

depositing large sums of cash, none exceeding $10,000, into at least seven different bank accounts. He made ten deposits of exactly $10,000. On multiple occasions, he made consecutive deposits within a short window of time. For example, on April 3, he visited three different banks and made three separate cash deposits ($10,000, $6,000, and $10,000) in less than thirty minutes. Asefaw later used a series of checks and wire transfers to move the deposited funds into two accounts with Citibank and Chevy Chase Bank. The government's expert witness, IRS Special Agent Mary Ann Veloso, testified that, in her opinion, this pattern of splitting large amounts of cash into multiple deposits of $10,000 or less on the same day or consecutive days is consistent with a pattern of structuring to avoid reporting requirements.

In addition, the government called Jessica Cuevas, a Citibank employee, who testified that in August 2007 she called Asefaw and spoke to him about his currency transactions with Citibank. Cuevas wrote an email after the conversation, stating that Asefaw had admitted to depositing only $10,000 to avoid the need for a currency transaction report (CTR). The email read:

> I spoke with Mr. Asefaw today. The funds he deposited were from himself since he's self-employed. He did mention he knew about the CTR and that's why he only deposited $10,000. I explained the importance of structuring deposits and filling out a CTR. He was very wary of the phone call and questioned the reasoning. He was also adamant about the fact that he

4

is a "self-employed hard worker" and is not "doing anything illegal". [sic] He even made a reference to closing his accounts with us and moving his money somewhere else because of the phone call.

The government also offered evidence that, in 2005, Asefaw owned a grocery store that he registered with the IRS as a money services business, a specialized type of business that conducts regulated financial transactions and is subject to the Bank Secrecy Act. During the same time period, he held an account at Manufacturers and Trade Trust Company ("M&T Bank"). The government offered evidence that between August and September 2005, at least four CTR's were filed by M&T Bank for currency withdrawals made by Asefaw. The government argued that Asefaw was present when the reports were completed because he had to provide his driver's license.

At the close of the government's case, Asefaw, who was representing himself, moved the court for judgment as a matter of law. The court denied the motion. Asefaw then took the stand and testified that he "had no idea about this law" and that he never intended to make the banks fail in their reporting duties. He testified that he had opened multiple accounts to take advantage of favorable interest rates and promotions. During the time when he was making deposits and moving money around, he testified that he "thought it was a legitimate

5

personal interest because nobody said anything to [him]" or told him he was breaking a law.

Following three days of trial, the jury returned a verdict for the government, finding by a preponderance of the evidence that the funds seized from Asefaw's accounts were involved in or traceable to transactions structured for the purpose of evading a financial institution's reporting requirements. Asefaw made no post-trial motions. The district court then entered a final order of forfeiture against the seized funds.

Asefaw timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

II.

Asefaw first argues that the government failed to prove by a preponderance of the evidence that he was aware of the reporting requirements and intentionally structured his deposits to evade them. However, Asefaw never filed a post-verdict motion renewing his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). As a result, we are foreclosed from considering his challenge to the sufficiency of the evidence. See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400-01 (2006); Helping Hand, LLC v. Baltimore Cnty., MD, 515 F.3d 356, 369-70 (4th Cir. 2008).

6

## III.

We next address Asefaw's contention that the district court erred in allowing the government to present certain evidence. We review the district court's evidentiary rulings for abuse of discretion, Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 310 (4th Cir. 2006), keeping in mind that evidentiary errors which are harmless cannot be grounds for granting a new trial or setting aside a verdict, 28 U.S.C. § 2111; Fed. R. Civ. P. 61; Taylor v. Virginia Union Univ., 193 F.3d 219, 235 (4th Cir. 1999) (en banc) (abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-99 (2003)). An error is harmless if we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946); see also Taylor, 193 F.3d at 235 (adopting the Kotteakos harmless error standard in civil cases).

## A.

Asefaw first argues that the evidence of prior CTR's from M&T Bank and his registration of a money services business should have been excluded under Federal Rule of Evidence 403. Because Asefaw did not raise this objection at trial, plain error review applies. See In re Celotex Corp., 124 F.3d 619, 631 (4th Cir. 1997) (adopting in civil cases the plain error

7

standard articulated in United States v. Olano, 507 U.S. 725, 732 (1993)). Under that standard, we may exercise our discretion to correct an error not raised below only if: (1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) we determine, after examining the particulars of the case, that the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Id. at 630-31 (citing Olano, 507 U.S. at 732).

Rule 403 provides that the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, . . . [or] misleading the jury." Asefaw argues that the evidence of prior CTR's was unfairly prejudicial and misleading because all the evidence showed was that at some point he presented a driver's license during the cash transactions, not that he was actually present when the CTR's were completed. Similarly, he argues that the evidence of his money services business was prejudicial and misleading because the government failed to prove that every person who registers a money services business knows about the reporting requirements.

At most, however, these arguments suggest that the probative value of this evidence was not strong, not that it was plainly prejudicial or misleading. But even evidence that has minimal probative value may be admitted under Rule 403 so long

8

as it is relevant and there is no danger of unfair prejudice or confusion. That is the case here. The evidence that Asefaw previously owned a money services business and had been involved in transactions that required a CTR tended to prove that he had prior exposure to currency transaction reporting requirements. Asefaw had the opportunity to rebut the evidence and point out its limitations at trial, and there was nothing prejudicial or misleading about it. Thus, the district court committed no error by admitting it.

B.

Asefaw next argues that the district court abused its discretion by allowing the testimony of Agent Veloso, Cuevas, and two other bank employees, Paul Schallmo and Courtney Smiley, because the government failed to timely disclose their identities to him prior to trial. He contends that their testimony should have been excluded under Federal Rule of Civil Procedure 37(c)(1).

Under Rule 37(c)(1), a party who fails to provide information or identify a witness as required by Rule 26(a) is not allowed to use that information or witness to supply evidence at trial unless the failure "was substantially justified or is harmless." Two disclosure requirements in Rule 26(a) are relevant here. First, "[a]bsent a stipulation or a court order," each party must disclose to the other party the

identity of any witness the party may use to present expert testimony at least ninety days before trial. Fed. R. Civ. P. 26(a)(2). Second, unless the court orders otherwise, at least thirty days before trial, each party must provide to the other party and file a pretrial disclosure listing the name of each witness that will testify. Fed. R. Civ. P. 26(a)(3).

Asefaw first contends that Agent Veloso's testimony should have been excluded because the government did not disclose her identity to him until forty-eight days before trial. The parties dispute whether Asefaw raised this objection at trial, and thus whether plain error review should apply. We need not reach that issue, however, because we conclude that the government's disclosure was timely under the district court's scheduling order. The scheduling order set the deadline for expert designations as February 27, 2012. The government disclosed its intent to designate Agent Veloso as an expert witness on February 22, 2012. Because the government's disclosure was timely under the court's order, it also satisfied Rule 26(a)(2). As a result, the district court did not err when it allowed Agent Veloso to testify.

Asefaw next argues that the district court should have excluded the testimony of Cuevas, Schallmo, and Smiley because the government failed to disclose them as witnesses until the

trial began.[3]  The government does not dispute that it failed to disclose its witnesses to Asefaw before trial as required by Rule 26(a)(2), but instead argues that the district court did not abuse its discretion by allowing the undisclosed witnesses to testify because the omission was harmless under Rule 37(c)(1).

The district court has "broad discretion" to determine whether a disclosure violation is substantially justified or harmless under Rule 37(c)(1).  S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).  We have said that this discretion should be guided by an analysis of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.  Id.

The district court overruled Asefaw's objection without discussing the Southern States factors, reasoning that Asefaw was not entitled to relief because he had never submitted an

---

[3]  In his opening brief, Asefaw also contends that the government failed to disclose the identity of another bank employee witness, Martha Wallis.  However, at trial, Asefaw admitted that he knew before trial that she would testify.

11

interrogatory asking the government to identify "persons having knowledge of facts pertinent to the case." We disavow this reasoning. Rule 26(a)(3) imposes an affirmative obligation to file and disclose to the other party, at least thirty days before trial unless the court orders otherwise, the names of the witnesses who will be presented. That obligation exists whether or not the other party has requested a witness list. Thus, the government's failure to disclose its witnesses violated Rule 26(a)(3). Rather than overruling Asefaw's objection to the undisclosed witnesses outright, the district court should have proceeded to analyze whether the government's omission was substantially justified or harmless under Rule 37(c)(1). We do not reach that question ourselves. Instead, assuming arguendo that the testimony from undisclosed witnesses should have been excluded, we conclude that any error committed by the district court in allowing them to testify did not affect Asefaw's substantial rights.

First, the testimony of Smiley and Schallmo was largely cumulative and therefore added little to nothing to the government's case. Neither witness had any personal knowledge of Asefaw's transactions, and their testimony was limited to introducing and authenticating bank records that documented some of them. These same transactions were also described by Agent Veloso in her testimony, and Asefaw did not dispute any of them.

12

Thus, there is no reason to believe that the jury's verdict would have been any different if the testimony of Smiley and Schallmo had been excluded.

Of course, the evidence presented by Cuevas was not merely cumulative; her email provided the only direct evidence that Asefaw admitted intent to evade the reporting requirements. Nevertheless, the powerful nature of the circumstantial evidence in this case demonstrates that any error in allowing Cuevas to testify was harmless. Over six business days, Asefaw deposited more than $100,000 in at least eighteen separate cash deposits, repeatedly taking large sums of cash and splitting them up into sums of $10,000 or less, often within a short period of time. He made ten deposits of exactly $10,000, and not once did his deposits exceed the $10,000 threshold that triggers reporting requirements. Asefaw never explained why, if he was unaware of the reporting requirements, he structured his deposits in this way. This gaping hole in his testimony reinforced the already powerful nature of the circumstantial evidence, practically requiring the conclusion that his purpose was to evade the reporting requirements. Cuevas's testimony, in essence, was icing on the cake.

In sum, even excluding the testimony of Cuevas, Schallmo, and Smiley, there was ample evidence to support the jury's finding by a preponderance of the evidence that Asefaw

13

intentionally structured his deposits to evade the reporting requirements. As a result, we can fairly say that any error in allowing the undisclosed witnesses' testimony did not "substantially sway" the jury's verdict, and thus, that any Rule 37(c)(1) error committed by the district court was harmless.

IV.

We turn now to Asefaw's last argument, that the forfeiture of the seized funds is unconstitutionally excessive under the Eighth Amendment. Because Asefaw failed to raise this objection at any point during the proceedings below, we may only disturb the judgment below if the requirements of plain error review are satisfied. See Olano, 507 U.S. at 732. The burden is on the party challenging the constitutionality of the forfeiture to demonstrate excessiveness. United States v. Ahmad, 213 F.3d 805, 816 (4th Cir. 2000).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. A punitive forfeiture of property violates the Excessive Fines Clause of the Eighth Amendment if it is "grossly disproportional" to the gravity of the offense. United States v. Bajakajian, 524 U.S. 321, 334 (1998); see also United States v. Ahmad, 213 F.3d at 815 (recognizing that "Bajakajian's

14

'grossly disproportional' analysis applies when determining whether any punitive forfeiture--civil or criminal--is excessive").

In Bajakajian, the Supreme Court considered the following factors to determine whether the forfeiture was unconstitutionally excessive: the nature and extent of illegal activity and whether the defendant fit into the class of persons for whom the statute was principally designed; the maximum penalties that a court could have imposed for the offense; and the harm caused by the offense. 524 U.S. at 337-39. There, an international traveler was convicted of failing to report that he was transporting more than $10,000 out of the United States in violation of 31 U.S.C. § 5316(a)(1)(A). Id. at 325. The Court concluded that the forfeiture of the full $357,144 he attempted to transport would violate the Excessive Fines Clause. Id. at 338. Noting that the defendant's only offense was a single reporting violation, the Court reasoned that the defendant did not fit within the class of persons, such as money launderers, drug traffickers, or tax evaders, for whom the statute was principally designed. Id. at 337-38. In addition, the maximum sentence that could have been imposed under the United States Sentencing Guidelines was six months, while the maximum fine was $5,000. Id. at 338. These penalties confirmed "a minimal level of culpability," ill-suited for the punitive

15

forfeiture of more than three-hundred thousand dollars. Id. at 338-39. Finally, the Court concluded that the harm caused by the reporting violation was minimal because the government was the only harmed party and the offense affected the government in "a relatively minor way" by depriving the government of information. Id. at 39. Thus, comparing the single reporting violation with the forfeiture of $357,144 sought by the government, the Court concluded that the forfeiture would be grossly disproportional to the gravity of the offense. Id. at 339.

In the years since Bajakajian was decided, we have applied the same factors when evaluating whether a challenged forfeiture is unconstitutionally excessive. In United States v. Ahmad, the claimant, who operated a money exchange business, was criminally prosecuted for his involvement in a complex operation involving transfers of currency to individuals in Pakistan and importation of surgical equipment from abroad. 213 F.3d at 807. Over a series of years, the claimant, in an effort to avoid reporting requirements, repeatedly structured deposits of cash received from other individuals for transfer abroad, in violation of § 5324. Id. We concluded that the civil forfeiture of $85,000 traceable to his structuring offenses was not grossly disproportional to the gravity of those offenses. 213 F.3d at

16

817.[4]  Although the maximum authorized penalties mirrored those in Bajakajian, the claimant's "conduct . . . was not a single, isolated untruth affecting only the government, but rather a series of sophisticated commercial transactions over a period of years that were related to a customs fraud scheme."  Id.  In addition, the claimant's structuring "not only deprived the government of important information, but also affected a financial institution's ability to comply with the law and jeopardized the funds of other persons."  Id. at 817.

Similarly, in United States v. Jalaram, Inc., we held that the criminal forfeiture of $385,390 in proceeds from a prostitution ring was not grossly disproportional to the gravity of the offense.  599 F.3d 347, 351, 356 (4th Cir. 2010).  Although the government had not identified any victims who suffered harm from the offense, the criminal activity spanned several months, generating hundreds of thousands of dollars in illicit revenues, and was connected with other offenses such as tax evasion.  Id. at 356.  Further, the maximum fine for the offense was $350,000, indicating that Congress considered the crime at issue "far more serious than the reporting offense in

---

[4]  We also held that the forfeiture of an additional $101,587.43 was not grossly disproportional to the gravity of the defendant's customs fraud offenses.  United States v. Ahmad, 213 F.3d 805, 819 (4th Cir. 2000).

Bajakajian." Id. This legislative judgment, we noted, raises "a significantly higher hurdle to show[ing] that the requested forfeiture is grossly disproportional to the gravity of [the] offense." Id.

An application of the Bajakajian factors to this case leads us to conclude that the forfeiture of the seized funds is not grossly disproportional to the gravity of the structuring violations. At the outset, we note that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." Bajakajian, 524 U.S. at 336 (citations omitted); see also Solem v. Helm, 463 U.S. 277, 290 (1983) (instructing reviewing courts to "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes"). Thus, "[t]here is a strong presumption of constitutionality where the value of a forfeiture falls within the fine range prescribed by Congress or the Guidelines." United States v. Malewicka, 664 F.3d 1099, 1106 (7th Cir. 2011) (citation omitted).

Congress authorized a maximum criminal fine of $500,000 in aggravated cases where a structuring offense involves more than $100,000 in a twelve-month period. See 18 U.S.C. § 3571(b)(3); 31 U.S.C. § 5324(d)(2); United States v. $79,650.00 Seized from Bank of Am., 650 F.3d 381, 387 (4th Cir. 2011). In such cases,

18

the maximum fine limitations of the Guidelines do not apply to temper this legislative judgment. See U.S.S.G § 5E1.2(a)(4); $79,650.00 Seized from Bank of Am., 650 F.3d at 387-88. Thus, Asefaw's structuring activities, which involved more than $100,000 in less than twelve months, could have subjected him to a criminal fine of up to $500,000, far in excess of the amount forfeited. That the forfeiture amount falls within the fine range authorized by Congress raises a presumption of constitutionality. As a result, Asefaw "must clear a significantly higher hurdle to show that the . . . forfeiture is grossly disproportional to the gravity of [his] offense." Jalaram, 599 F.3d at 356. He has not done so.

First, Asefaw fails to demonstrate that he falls outside the class of persons for whom the structuring statute was principally designed. Congress enacted the Bank Secrecy Act, in large part, out of concern that inadequate records maintained by financial institutions "seriously impair[ed] the ability of the Federal Government to enforce the myriad criminal, tax, and regulatory provisions of laws which Congress had enacted." California Bankers Ass'n v. Shultz, 416 U.S. 21, 27 (1974). "By forcing financial institutions to [file CTRs], Congress hoped to maximize the information available to federal regulatory and criminal investigators." United States v. St. Michael's Credit Union, 880 F.2d 579, 582 (1st Cir. 1989). "The overall goal of

19

the statute was to interdict the laundering of illegally obtained and untaxed monies in legitimate financial institutions." Id. (citing Schultz, 416 U.S. at 26-30).

Through his structured deposits, Asefaw repeatedly interfered with the reporting obligations of financial institutions in just the way § 5324 was intended to prohibit. By furtively introducing large amounts of unreported cash into the financial system, Asefaw frustrated a primary objective of the Bank Secrecy Act--to ensure the maintenance of bank records necessary to the investigation and prosecution of criminal, tax, and regulatory offenses. Moreover, while Asefaw was not charged with money laundering or tax evasion, his structuring violations "could have facilitated such conduct in just the way the statute was designed to frustrate." Malewicka, 664 F.3d at 1106. Indeed, we do not have the benefit, as the Court did in Bajakajian, of a finding by the trier of fact that his funds "were not connected to any other crime." 524 U.S. at 326. Thus, it is not apparent that Asefaw falls outside the class of persons for whom the statute is principally designed. See Malewicka, 664 F.3d at 1105-06 (finding that defendant not charged with other wrongdoing nevertheless fit within the class of persons for whom the structuring statute was principally designed because her structuring activities frustrated the

20

statute's purpose and "could have facilitated [money laundering or tax evasion]").

Second, as noted above, the maximum criminal fine that Asefaw could have faced is $500,000, far in excess of the miniscule $5,000 maximum fine authorized in Bajakajian. This distinction confirms that the structuring activities in this case involve a higher level of culpability than the isolated reporting violation at issue in Bajakajian. See Jalaram, 599 F.3d at 356 (concluding that the defendant's crimes were more serious than in Bajakajian, in part, based on the disparity between the maximum fines authorized).

Finally, unlike in Bajakajian, we cannot say that the harm caused by Asefaw's illegal structuring was "relatively minor." Bajakajian, 524 U.S. at 339. Asefaw's conduct not only deprived the government of information, it also affected the financial institutions involved in his transactions, repeatedly interfering with their reporting duties. See Ahmad, 213 F.3d at 817 (finding that the harm caused was not minimal, in part, because the defendant's structuring activities "implicated an intermediary actor, the First Virginia Bank, and affected its legal duty to report certain transactions"). Given Asefaw's repeated interference with the legal duties of multiple financial institutions, the harm caused by his conduct is more substantial than in Bajakajian.

21

In sum, after weighing the nature of Asefaw's structuring violations, the maximum fine that could have been imposed, the harm caused to the financial institutions, and the deference we owe to the judgment of Congress concerning the appropriate penalty, we conclude that the forfeiture amount is not grossly disproportional to the gravity of Asefaw's illegal activity. We therefore do not find the forfeiture amount unconstitutionally excessive.

## V.

For the reasons explained above, the judgment is affirmed.

AFFIRMED

22