**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

   v.

LIQUIDATORS OF EUROPEAN FEDERAL
CREDIT BANK, IN LIQUIDATION,
     *Claimants-Appellants,*

   and

PAVEL IVANOVICH LAZARENKO,
     *Defendant.*

Nos. 09-10116
D.C. No.
3:00-cr-00284-CRB

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

LIQUIDATORS OF EUROPEAN FEDERAL
CREDIT BANK, IN LIQUIDATION,
     *Claimants-Appellants,*

   v.

PAVEL IVANOVICH LAZARENKO,
     *Defendant-Appellee.*

No. 09-10161
D.C. No.
3:00-cr-00284-CRB

229

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

LIQUIDATORS OF EUROPEAN FEDERAL
CREDIT BANK, IN LIQUIDATION,
          *Claimants-Appellants,*

                    v.

PAVEL IVANOVICH LAZARENKO,
          *Defendant-Appellee.*

No. 09-10183

D.C. No.
3:00-cr-00284-CRB

OPINION

Appeals from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
August 10, 2010—San Francisco, California

Filed January 4, 2011

Before: Susan P. Graber, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber

---

**COUNSEL**

Rory K. Little, McDermott Will & Emery LLP, San Francisco, California, for the claimant-appellant.

Vijay Shanker, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

---

**OPINION**

GRABER, Circuit Judge:

Defendant Pavel Ivanovich Lazarenko, former prime minister of Ukraine, laundered money from illegal activities through many banks worldwide, including the European Federal Credit Bank ("Eurofed"), located in the sovereign nation of Antigua and Barbuda ("Antigua"). Defendant's activities raised prosecutorial eyebrows in both the United States and Antigua. Antiguan officials ordered the liquidation of

Eurofed, and the High Court of Antigua appointed several persons as "Liquidators" of Eurofed to assist in the collection and distribution of Eurofed's assets to its rightful, law-abiding owners. Meanwhile, the United States government indicted Defendant on criminal charges, including money laundering. *See United States v. Lazarenko*, 564 F.3d 1026 (9th Cir.) (describing case history), *cert. denied*, 130 S. Ct. 491 (2009).

The United States government discovered that some of Defendant's assets—the assets at issue here—which originally had been deposited with Eurofed, were held in two Eurofed correspondent accounts at Bank of America in San Francisco. The government seized those assets and sought criminal forfeiture. Liquidators asserted ownership of the assets and sought to defeat criminal forfeiture. In an ancillary proceeding pursuant to 21 U.S.C. § 853(n), the district court rejected Liquidators' arguments challenging the criminal forfeiture and entered a final order of forfeiture. Liquidators timely appeal. We reverse and remand with instructions that the district court vacate the forfeiture order and that the district court order the government to return the assets to Liquidators.

## FACTUAL AND PROCEDURAL HISTORY

We previously have detailed the factual and procedural history of Defendant's criminal convictions. *Lazarenko*, 564 F.3d at 1030-33. Relevant here, the final indictment, filed in 2001, contained a criminal forfeiture allegation pursuant to 18 U.S.C. § 982. The indictment alleged that Defendant "shall forfeit to the United States all property, real and personal, involved in such offense, or any property traceable to such property, including but not limited to [certain specified properties not including the assets at issue here]." As part of the substantive allegations, the indictment referred to many different specific bank accounts and specific bank transfers, but the indictment nowhere referred to the assets presently in dispute. Those assets are approximately $2.5 million in funds

and Ukrainian bonds on deposit with Bank of America. The government asserts that those assets are connected to Defendant's money laundering.

In 2004, the jury convicted Defendant of money laundering and, about six weeks later, the government filed a motion for criminal forfeiture. The motion sought forfeiture of the bank accounts and funds mentioned in the indictment, but the motion did not name the assets at issue here. Likely because of the complexity of this case, the district court did not rule on the motion immediately.

Several months later, in January 2005, the government obtained a civil warrant to seize the assets at issue here. *See United States v. Lazarenko (Liquidators)*, 476 F.3d 642, 646 (9th Cir. 2007) (describing history of civil forfeiture action); *United States v. $1,379,879.09 Seized from Bank of Am.*, 374 F. App'x 709, 710 (9th Cir. 2010) (unpublished decision) (same). In March 2005, the government filed a civil complaint against the assets. Liquidators moved for summary judgment on statute of limitations grounds. Because the government learned of the underlying money-laundering offenses by 1999 at the latest, the five-year statute of limitations barred the 2005 civil forfeiture complaint. Eventually, the government conceded that the statute of limitations barred its civil forfeiture action. On October 26, 2005, the district court therefore granted Liquidators' motion for summary judgment in the civil action.[1]

That same day, at the government's request, the district court also issued a *criminal* seizure warrant over the same assets. The government retained possession of the assets. In January 2006, Liquidators filed a "motion for return of the illegally seized funds." Additionally:

---

[1]The district court thereafter awarded attorney fees to Liquidators for the work related to the civil forfeiture proceedings. *See $1,379,879.09 Seized from Bank of Am.*, 374 F. App'x at 710-11 (affirming the grant of attorney fees).

In March 2006, Liquidators applied ex parte to Judge Jenkins for an immediate hearing on their motion for return of the illegally seized funds. Liquidators claimed that *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985), afforded them the right to a constitutionally mandated and immediate hearing. They reasoned that waiting to commence the ancillary proceedings contemplated by 21 U.S.C. § 853(n) until the district court sentenced Lazarenko would not sufficiently protect their due process rights to a reasonably prompt opportunity to contest the seized property to which they claim ownership. . . .

After holding a telephonic conference with all interested parties, the district court denied Liquidators' ex parte application. The district court found that setting a hearing on Liquidators' motion after sentencing Lazarenko comported with due process, as Congress has provided for ancillary proceedings on the heels of a sentence imposed upon conviction of a particular crime, 21 U.S.C. § 853(n). Soon thereafter, the district court granted the United States' application for a preliminary order of forfeiture under 18 U.S.C. § 982(a)(1) and Federal Rule of Criminal Procedure 32.2(b).

*Liquidators*, 476 F.3d at 646-47 (some citations omitted). Liquidators thereafter appealed from both orders and, alternatively, asked us to grant a writ of mandamus compelling the district court to order the government to return the assets to Liquidators immediately.

In that interlocutory appeal, Liquidators argued, among other things, that three legal doctrines independently barred this criminal forfeiture action: (1) the statute of limitations, (2) res judicata, and (3) the act of state doctrine. The government argued that we lacked jurisdiction to reach the merits of those arguments because of the procedural posture of the

appeals. Specifically, the government asserted that there were no due process concerns because Liquidators could raise their legal challenges to the criminal forfeiture action in a soon-to-be-commenced ancillary proceeding under § 853(n).

We dismissed the appeals and the mandamus petition for lack of jurisdiction. We summarized in the conclusion:

> We hold that Liquidators may adequately protect their interest in the funds and bonds in the ancillary proceeding under § 853(n). Congress designated no other means for third parties to vindicate their interest in forfeited property. Because Liquidators may present *all legal arguments* that might bar the government's forfeiture in the proceedings below, and because the district court is prepared to undertake the ancillary proceedings promptly, we further hold that Liquidators fail to satisfy the constitutional and prudential components of standing and ripeness.

*Id.* at 653 (emphasis added). In our reasoning, we clarified that, during the ancillary proceeding, Liquidators could present its legal arguments concerning, among other theories, the statute of limitations, res judicata, and the act of state doctrine. *Id.* at 650 & n.2.

On remand, the district court initiated the ancillary proceeding under 21 U.S.C. § 853(n). During that proceeding, the government argued—contrary to the earlier position that it had asserted to us—that the relevant statutes and rules of criminal procedure barred Liquidators from raising their legal challenges to the forfeiture. The district court agreed with the government but also held, in the alternative, that the three legal challenges fail on their merits. The district court also rejected Liquidators' factual challenges to the forfeiture.

Accordingly, the district court entered a final order of forfeiture in favor of the government. Liquidators timely appeal.[2]

## STANDARD OF REVIEW

We review de novo questions of law, statutory interpretation, interpretation of Federal Rules of Criminal Procedure, and claims of res judicata. *United States v. Roblero-Solis*, 588 F.3d 692, 698 (9th Cir. 2009) (questions of law); *United States v. Burkholder*, 590 F.3d 1071, 1074 (9th Cir. 2010) (statutory interpretation); *United States v. Estrada-Eliverio*, 583 F.3d 669, 671-72 (9th Cir. 2009) (interpretation of the Federal Rules of Criminal Procedure); *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (res judicata).

## DISCUSSION

As they have throughout these proceedings, Liquidators seek resolution of their argument that three legal doctrines independently bar this criminal forfeiture action: the statute of limitations, res judicata, and the act of state doctrine. Before reaching those arguments, we must address the government's contention that Liquidators cannot raise those arguments in the ancillary proceeding.

### A. *Ancillary Proceedings under § 853(n) and Judicial Estoppel*

Title 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2 govern Defendant's criminal forfeiture proceedings. Defendant was convicted of money laundering and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. Title 18 U.S.C. § 982(a)(1) requires that "[t]he court, in imposing sentence on a person convicted of an offense in

---

[2]Liquidators filed three separate appeals, which we consolidated. We agree with the parties that we have jurisdiction over the appeals.

violation of section 1956 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Section 982(b)(1) states that the forfeiture proceedings "shall be governed by the provisions of [21 U.S.C. § 853]." Rule 32.2 specifies the procedure governing criminal forfeiture proceedings under § 853.

Here, briefly, is how the system works. *See generally Liquidators*, 476 F.3d at 647-48. The government must provide notice to the defendant that it intends to seek forfeiture. Rule 32.2(a). The notice must be included in the indictment or information, but the notice "need not identify the property subject to forfeiture." *Id.* If the defendant is convicted on a count supporting forfeiture (by statute), then the government may move for entry of a preliminary order of forfeiture. Rule 32.2(b). "As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Rule 32.2(b)(1)(A). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." *Id.*

At no point may any third party intervene in the criminal trial or appeal. 21 U.S.C. § 853(k)(1). Additionally, once the government has filed the criminal indictment or information against the defendant, no third party may "commence an action at law or equity against the United States concerning the validity of his alleged interest in the property." *Id.* § 853(k)(2). Instead, Congress protected the interests of third parties through the operation of an ancillary proceeding. *Id.* § 853(n); Rule 32.2(b)(2). As stated by Rule 32.2(b)(2): "The court must enter the [preliminary order of forfeiture] without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred

until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."

The entry of a preliminary order of forfeiture permits the government to commence an ancillary proceeding to determine the rights of third parties. Rule 32.2(b)(3). The preliminary order of forfeiture becomes final with respect to the defendant at sentencing (or earlier, if the defendant agrees). Rule 32.2(b)(4)(A). But the order is not final with respect to interested third parties until the conclusion of the ancillary proceeding. 21 U.S.C. § 853(n)(6).

The government must provide notice of its intended forfeiture of specific property, both generally and specifically to known third parties who may have an interest in the property. *Id.* § 853(n)(1); Rule 32.2(b)(6). "If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding . . . ." Rule 32.2(c)(1). "An ancillary proceeding is not part of sentencing." Rule 32.2(c)(4). The Rule and statute specify details concerning the timing and procedure of the ancillary proceeding, including a hearing to resolve factual disputes. 21 U.S.C. § 853(n)(4), (5); Rule 32.2(c)(1). On the substance of the ancillary proceeding, § 853(n)(6) states:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

At the conclusion of the ancillary proceeding, the court enters a final order of forfeiture, which is final with respect to all third parties. Rule 32.2(c)(2). Third parties may appeal from a final order of forfeiture. Rule 32.2(c)(3).

In most situations, this system adequately protects everyone's interests. If the defendant believes that the property is his or hers, the defendant has an adequate incentive to challenge the forfeitability of the property. Nothing prevents the defendant from raising legal challenges to the forfeitability of the property during the criminal proceeding itself. Additionally, the statutory scheme usually provides adequate protection for the interests of third parties, because the statute permits bona fide purchasers and those with superior title to present their claims. If they have a superior interest in the property as to the defendant, § 853(n)(6)(A), or if they are bona fide purchasers for value, § 853(n)(6)(B), then they would prevail in the ancillary proceeding *on the merits*, regardless of any possible legal challenges to the forfeitability of the property generally. And, if the third parties do not have a superior interest and are not bona fide purchasers, then any ruling that the forfeitability of the property was legally deficient would not accrue value to the third parties, because they have no interest in the property.

Liquidators assert, however, that this case might be an exception to the usual situation. The Antiguan government has ordered the liquidation of Eurofed. As a practical matter, Defendant has no hope of ever obtaining the disputed assets

because, even if forfeiture is defeated here, Defendant almost certainly will not recover the funds from the liquidation proceedings that are underway in Antigua. Accordingly, Defendant had no incentive to challenge—and did not challenge—the criminal forfeiture action brought by the United States government.

**[1]** Additionally, unlike most scenarios, in which the interests of the third parties are protected by § 853(n)(6), here Liquidators may not have a valid claim under either subsection of § 853(n)(6). Liquidators may lack a valid superior-title claim under subsection (A) because their interest in the property arose *after* Defendant's criminal conduct—necessarily, because their interest in the property, like the government's interest in prosecuting Defendant, arose *because of* Defendant's criminal conduct.[3] And Liquidators may lack a valid claim under subsection (B) because they cannot claim to be a bona fide purchaser for value: They did not *purchase* the property—they acquired it through other legal means, namely, by order of the High Court of Antigua. In short, Liquidators may lack a valid claim under either subsection of § 853(n)(6). But, as Liquidators point out, a ruling that the criminal forfeiture action is invalid would, in fact, accrue value to Liquidators, because Liquidators had present-day possession of the assets at the time of seizure, and a return of the assets therefore would benefit Liquidators (and, ultimately, the innocent depositors of Eurofed).

**[2]** Liquidators view this case as the convergence of those unusual circumstances: Defendant had no incentive to challenge the forfeitability of the property, Liquidators likely have no valid claim on the grounds described in § 853(n)(6), and a successful challenge to forfeitability would benefit Liquidators. In this odd scenario, Liquidators argue, the government

---

[3]Liquidators argue that, in fact, they do satisfy § 853(n)(6)(A). We do not reach that argument because we hold that res judicata bars the criminal forfeiture action in its entirety.

might have absolutely no right to forfeiture because of a patent and fatal flaw (such as untimeliness or res judicata), yet the government nevertheless might prevail because Defendant has no reason to challenge the forfeitability and, if Liquidators are prohibited from raising legal challenges, the government nevertheless will retain possession and title to the assets.

**[3]** The government disputes the extent to which the circumstances of this case are unusual. In any event, it argues, third parties cannot raise legal challenges to the forfeitability of the property in an ancillary proceeding. The government argues that, by design, § 853(n)(6) provides the *only* theories by which a third party may challenge the forfeiture: superior title and bona fide purchaser. According to the government, it follows that third parties may not assert any other challenges, such as res judicata, to the forfeitability of the property. Many legal sources, including the Advisory Committee's Notes to Rule 32.2, our previous statements on the scope of ancillary proceedings, and our sister circuits' holdings, support the government's view. *See, e.g.*, *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) ("The petitioner may prevail only upon showing, by a preponderance of the evidence, that he possessed a vested or superior legal right, title, or interest in the property at the time the criminal acts took place, or that he was a bona fide purchaser for value."); *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 334 (6th Cir. 2009) ("Because § 853(n)(6) offers just two grounds for relief, only two (closely related) substantive questions may arise when a third party asserts an interest in forfeitable property—even for the first time at a hearing.").

**[4]** Liquidators' response is, in short: "We saw this coming."[4]

---

[4]Liquidators also argue that, even if the government's position is correct as a general matter, we should recognize an exception for the unusual circumstances of this case, discussed above. Buttressed by the constitutional avoidance doctrine, Liquidators argue that Congress could not have intended the allegedly absurd result that the government is permitted to

In the original appeal, Liquidators strenuously asserted that the procedural scheme created by Congress violated their due process rights. *See Liquidators*, 476 F.3d at 647 ("Liquidators essentially challenge the entire process Congress prescribed for third parties to adjudicate their interest in property subject to forfeiture."). Liquidators foresaw the arguments now advanced by the government. They argued that, if we did not permit them to intervene in the criminal proceeding in order to make their legal challenges, the government would prevent them from raising those legal challenges in the ancillary proceeding, for the very reasons that the government now advances. In sum, Liquidators argued that the procedural scheme violated due process because they would *never* be permitted to raise their legal challenges to forfeitability.

In that appeal, the government responded by pulling the rug out from under Liquidators' argument. In its briefing to us, the government affirmatively rebutted the premise of Liquidators' due process challenge. The government assured us that, in the eventual ancillary proceeding, Liquidators could raise its legal challenges to forfeitability and that the courts could and would resolve those challenges on their merits. The government thus recharacterized Liquidators' due process argument as a demand for a hearing on their claims prematurely, before the ancillary proceeding took place. For instance, in its

---

seize and keep property to which it has no legal right and as to which the property's rightful owners cannot mount a challenge. *See United States v. Crozier*, 777 F.2d 1376, 1383 (9th Cir. 1985) (holding that persons asserting a property right have a due process right "to be heard 'at a meaningful time and in a meaningful manner' " (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))); *see also United States v. Reckmeyer*, 836 F.2d 200, 206-08 (4th Cir. 1987) (interpreting § 853(n)(6) broadly to permit legal challenges to the forfeitability of property in order to avoid due process concerns). We do not reach those arguments because, as explained in text, the doctrine of judicial estoppel prevents the government from making its argument. We do not decide whether, and to what extent, third parties may challenge forfeitability in an ancillary proceeding where judicial estoppel plays no role.

response to an emergency motion filed by Liquidators, the government stated:

> When the dust settles, the Liquidators' 'emergency motion' is not about the merits of any of the Liquidators' arguments, *all of which can be advanced and resolved in the ancillary proceeding* and then appealed, if the resolution is adverse. Rather, the emergency motion is about whether the Liquidators have standing to demand a particular type of process . . . .

(Emphasis added.) The government's response brief was worded even more strongly. In the introductory paragraph to a section entitled "The Liquidators['] Claims, Which are Without Merit, All Can Be Raised and Resolved in the Ancillary Proceeding," the government stated: "The ancillary proceeding provides a mechanism for resolving factual and legal disputes relating to third party ownership of forfeited property. All of the Liquidators['] claims can be raised and resolved, with an appeal if necessary, at the conclusion of that proceeding. *See, e.g.*, [*United States v. Real Property in Waterboro*, 64 F.3d 752, 756 (9th Cir. 1995)] (cannot assert *res judicata* prior to ancillary proceeding)."

In view of the government's representations, we held:

> Liquidators present no reason why the ancillary proceeding would inadequately protect their interest in adjudicating their competing claim to the property. In the proceedings that we understand the district court will promptly commence below, Liquidators may present all arguments and defenses to defeat the government's forfeiture, including those raised in their seizure motion and on appeal.[FN2] We express no opinion on the merits of those arguments, and the district court may freely apply the law to the facts as it finds them during the

ancillary proceedings.

<hr>

FN2. To clarify, these include whether: (1) the government seized the funds outside the limitation period, (2) res judicata bars the criminal seizure, (3) the criminal seizure violates the act of state doctrine, [and other arguments irrelevant here].

*Liquidators*, 476 F.3d at 650-51 & n.2; *see also id.* at 653 ("Because Liquidators may present all legal arguments that might bar the government's forfeiture in the proceedings below, and because the district court is prepared to undertake the ancillary proceedings promptly, we further hold that Liquidators fail to satisfy the constitutional and prudential components of standing and ripeness.").

**[5]** At oral argument in the original appeal, counsel for Liquidators expressed his fear that the government was playing a "shell game" whereby the government asserts that Liquidators can raise their arguments later, but subsequently states that Liquidators cannot raise the arguments at all. His concern turned out to be justified, as that is exactly what the government did at the ancillary proceeding following our remand. Under the circumstances, judicial estoppel bars the government from effecting its sleight of hand.

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." In determining whether to apply the doctrine, we typically consider (1) whether a party's later position is "clearly inconsistent" with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to "derive an unfair advantage or impose an unfair detriment on the opposing party."

*United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)) (some internal quotation marks omitted). All three elements are met here.

The government's "original position" was that Liquidators could raise its legal challenges in the ancillary proceeding. Its "later position" is that Liquidators cannot raise its legal challenges in the ancillary proceeding. Those are directly contradictory positions; necessarily, they are "clearly inconsistent."

The government disputes our characterization of its original position. According to the government, whatever it may have stated in the portions of its papers quoted above, it also made some statements in the original appeal that are consistent with its current position that Liquidators cannot raise their legal challenges at all. As a factual matter, the government is correct that, in the original appeal, it occasionally took the position, consistent with its current position, that Liquidators' legal arguments would be barred. But we cannot overlook what the government now wishes it had not stated. It is inescapable that the government affirmatively and forcefully advanced a position clearly inconsistent with its current position.

The second prong of judicial estoppel is helpful here: "whether the party has successfully persuaded the court of the earlier position." *Ibrahim*, 522 F.3d at 1009. As noted above, we plainly understood the government's position in the original appeal as allowing Liquidators to raise their arguments during the ancillary proceeding, and we were persuaded by that position. *Liquidators*, 476 F.3d at 650-51 & n.2. In other words, even though the government took seemingly inconsistent positions at times, the panel was convinced by the position, squarely stated in the government's brief, that "[a]ll of

the Liquidators['] claims can be raised and resolved" in the ancillary proceeding.[5]

[6] In conclusion, even though the government occasionally contradicted itself in the original appeal, it took a position (1) clearly inconsistent with its current position and (2) convinced the court of that position, (3) to Liquidators' unfair detriment. We exercise our discretion and hold that judicial estoppel bars the government from arguing that Liquidators cannot raise its legal claims challenging forfeitability.

B.   *Res Judicata*[6]

Liquidators argue that res judicata bars the criminal forfeiture here. Before addressing that issue, some discussion of civil and criminal forfeiture is in order. Civil forfeiture is an *in rem* proceeding against the *res*, on the legal fiction that the property itself is "guilty." *Nava*, 404 F.3d at 1123. To achieve civil forfeiture, the government generally must prove, by a preponderance of the evidence, the culpability of the owner and a nexus between the property and the illegal activity. *Id.* at 1124.

By contrast, criminal forfeiture is an *in personam* proceeding against the defendant personally and is part of the defendant's punishment. *Id.* Accordingly, to achieve criminal forfeiture, the government first must prove, beyond a reasonable doubt, that the defendant is guilty of the crime. *Id.* The government then must prove, by a preponderance of the evidence, a nexus between the property and the crime. *Id.*

---

[5]For good reason, the government does not argue that the quoted text meant only that Liquidators could raise their arguments and get a "resolution" that the arguments could not be raised. We have rejected such semantic gamesmanship. *Russell v. Rolfs*, 893 F.2d 1033, 1037-39 (9th Cir. 1990).

[6]Because we conclude that res judicata bars this criminal forfeiture action, we do not reach Liquidators' alternative arguments concerning the statute of limitations and the act of state doctrine.

The two types of forfeiture actions have much in common. Both seek the same result: forfeiture of the property. Both arise from exactly the same facts: the owner's illegal activities. Both involve the same plaintiff: the government. Both require that the government establish the same general determination: proof by preponderance of the evidence of a nexus between the property and the illegal activity.

But the two types of forfeiture actions differ in one very important way: To achieve criminal forfeiture, the government must prove culpability beyond a reasonable doubt; to achieve civil forfeiture, however, the government must prove culpability only by a preponderance of the evidence. For that reason, if the government's criminal prosecution of the property owner fails, that failure does not prevent the government from pursuing civil forfeiture. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361-62 (1984). The government may pursue civil forfeiture even after a failed criminal prosecution. *Id.*

**[7]** Here, however, we face the reverse situation. The government sought civil forfeiture but filed its action too late. After Liquidators pointed out the untimeliness of the action, the government conceded that its action was time-barred, and the district court entered a final judgment against the government. After the criminal conviction of Defendant, the district court entered a final order of criminal forfeiture in favor of the government over the same property. Liquidators argue that the dismissal of the civil forfeiture action is res judicata, barring the government from obtaining criminal forfeiture.

**[8]** "Three elements constitute a successful res judicata defense. Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (footnote and internal quotation marks omitted). The second and third elements are clearly met. "The Supreme

Court has unambiguously stated that a dismissal on statute of limitations grounds is a judgment on the merits." *Id.* at 1081. Additionally, although the nominal defendant in a criminal forfeiture action (the criminal defendant) is different from the nominal defendant in a civil forfeiture action (the property itself), the interested party in both actions is identical: the owner of the property. And, of course, the government is the plaintiff in both actions. There is therefore privity between parties. *See id.* at 1081-82 (holding that "privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases").

**[9]** The question, then, is whether there is "an identity of claims." We have long recognized the flexibility inherent in the res judicata determination with respect to identity of claims. *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 n.7 (9th Cir. 1982) ("[I]dentity of causes of action 'cannot be determined precisely by mechanistic application of a simple test.'" *(quoting Abramson v. Univ. of Haw.*, 594 F.2d 202, 206 (9th Cir. 1979))). To decide the identity of claims, we have applied four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 1201-02 (quoting *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) (per curiam)); *see, e.g.*, *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952-53 & n.11 (9th Cir. 2002) (applying the criteria). The fourth criterion—the same transactional nucleus of facts—is the most important. *Cent. Delta Water Agency*, 306 F.3d at 952.

**[10]** There can be little doubt that the civil forfeiture action and the criminal forfeiture action arose from the "same transactional nucleus of facts": Defendant's criminal conduct. There are no real differences (if there are any differences at all) between the factual predicates for the two forfeiture actions. Through a straight-forward application of our criteria, then, res judicata applies.[7]

The issue is complicated to some extent by our description of the fourth criterion in other cases. In applying that criterion, we have held that "[r]es judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits." *Tahoe-Sierra*, 322 F.3d at 1078 (internal quotation marks omitted); *see also Dionne v. Mayor of Baltimore*, 40 F.3d 677, 683 (4th Cir. 1994) (holding, in a different context, that "a critical predicate for applying claim preclusion is that the claimant shall have had a fair opportunity to advance all its 'same transaction' claims in a single unitary proceeding"). In this case, the government could not have brought the criminal forfeiture "claim" as a separate claim in the civil forfeiture action (or vice versa). The statutes governing the two types of actions are entirely separate and do not permit such mingling. Accordingly, our description of the fourth criterion, in *Tahoe Sierra* and other cases, suggests that res judicata would *not* apply here.

---

[7]In our view, the other three *Costantini* factors do not help the analysis much here. The second factor supports a finding of res judicata, because "substantially the same evidence is presented in the two actions." *Costantini*, 681 F.3d at 1202. The third factor also supports a finding of res judicata, because "the two suits involve infringement of the same right." *Id.* The first factor, "whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action," *id.* at 1201-02, is unhelpful here because it begs the question. Resolution of that factor depends only on our conclusion about res judicata.

Nonetheless, we find no true conflict between our holding today and our previous discussions. Importantly, in most res judicata cases, the inquiry about the "same transactional nucleus of facts" *is the same inquiry as* whether the claim could have been brought in the previous action. If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action. The plaintiff simply could have added a claim to the complaint. If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action. Either way, the inquiry into the "same transactional nucleus of facts" is essentially the same as whether the claim could have been brought in the first action. In that context, it makes sense, when asking whether the claims involve the "same transactional nucleus of facts," to ask as a proxy whether the claims could have been brought in the original action.

**[11]** But this case is different. Because the statutes governing the two types of forfeiture actions are distinct and do not permit consolidation, the fact that the two "claims" could not have been brought in the same action does not advance the true inquiry: whether the claims arose from the same transactional nucleus of facts. As discussed above, that criterion plainly is met here. We hold that a final judgment against the government in a civil forfeiture proceeding acts as res judicata against a criminal forfeiture proceeding with respect to the same property when the claims in the latter proceeding arise from the same transactional nucleus of facts.

Our conclusion is driven by the unique context of forfeiture. Unlike in other contexts, the two types of forfeiture actions *always* seek exactly the same result (forfeiture of the property), arise from exactly the same facts (the owner's illegal activity), necessarily always involve the same potential plaintiff (the government), and involve the same general determination (proof of the owner's culpability and a nexus between the property and the illegal activity). The two forfei-

ture options—civil and criminal—provide the government two different paths to reaching the same goal—forfeiture of the property. As discussed above, the civil forfeiture path carries a lower burden of proof. Once the government has followed that path to final judgment, permitting the government then to pursue criminal forfeiture effectively would permit the government a second bite at the same apple.[8]

Nor does application of res judicata in these circumstances hinder the government or thwart the dual-track system of forfeiture created by Congress. The forfeiture statutes generally allow the government to pursue both civil forfeiture and criminal forfeiture at the same time. Importantly, those statutes permit the government to seek a stay of the civil forfeiture proceedings while the government conducts a criminal prosecution or investigation. *See, e.g.*, 18 U.S.C. § 981(g) (permitting a stay of civil forfeiture proceedings involving money laundering). As discussed above, if the government's criminal forfeiture action fails, it may then pursue civil forfeiture. But, as here, once the government has sought—but failed—to achieve civil forfeiture, res judicata prohibits criminal forfeiture of the same property. This system provides the maximum benefit to the government: a civil forfeiture action permits the government to seize the property in question while it pursues a criminal investigation and possible prosecution and, even if the criminal prosecution fails (or is not begun), the government still may pursue civil forfeiture (by asking the court to dissolve the stay in the civil action). This system also promotes the goals of res judicata: fairness, finality, and avoid-

---

[8]As noted in text, the important point for purposes of res judicata is that the district court issued a final judgment in the civil forfeiture action. Although the government filed the criminal complaint before filing the civil forfeiture action, the district court issued a final judgment in the civil forfeiture action before the criminal proceeding had concluded. Once the district court issued a final judgment in the civil forfeiture action, that judgment became res judicata. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 692 n.2 (9th Cir. 2007) (recognizing that a judgment in a later-filed action can act as res judicata to bar an earlier-filed action).

ance of duplicate judicial proceedings. Only when the government bumbles its forfeiture proceedings, as happened here, will res judicata pose any sort of obstacle to obtaining a person's crime-connected property.

In a detailed and lengthy opinion, the First Circuit reached the same conclusion through much the same reasoning. *United States v. Cunan*, 156 F.3d 110, 114-20 (1st Cir. 1998). We agree with and adopt both its reasoning and its conclusion that "*res judicata* bars a criminal forfeiture following dismissal with prejudice of a prior civil forfeiture proceeding involving the same property." *Id.* at 120. As the First Circuit noted, the only other circuit courts to have mentioned the issue have expressed support for the same view, albeit in dictum. *Id.* at 119-20; *see United States v. Maull*, 855 F.2d 514, 517 n.3 (8th Cir. 1988) (declining to reach the issue); *id.* at 517-18 (Arnold, J., dissenting) (stating that he would reach the issue and would hold that a civil forfeiture loss is res judicata with respect to a criminal forfeiture action); *United States v. Lots 43 Through 46*, 935 F.2d 1134, 1137 (10th Cir. 1991) ("If we were writing on a clean slate we would, in fact, be inclined to views about the case consistent with the persuasive dissent of Judge Arnold from the Eighth Circuit's opinion in [*Maull*].").

## CONCLUSION

**[12]** We reverse and remand with instructions that the district court amend the final order of forfeiture to exclude the assets at issue here and to direct the government to return those seized assets to Liquidators.

**REVERSED and REMANDED with instructions.**