**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

$79,650.00 SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 8247,
at Bank of America, 7400 Little
River Turnpike, Annandale,
Virginia, in the Name of Girma
Afework,

*Defendant-Appellee,*

GIRMA AFEWORK,

*Claimant-Party in Interest.*

No. 10-1291

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

$79,650.00 SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 8247,
at Bank of America, 7400 Little
River Turnpike, Annandale,
Virginia, in the Name of Girma
Afework,

*Defendant-Appellee,*

GIRMA AFEWORK,

*Claimant-Appellant.*

No. 10-1294

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Ivan Darnell Davis, Magistrate Judge.
(1:08-cv-01233-IDD)

Argued: January 27, 2011

Decided: May 9, 2011

Before TRAXLER, Chief Judge, and KING and WYNN,
Circuit Judges.

No. 10-1291 vacated and remanded; No. 10-1294 affirmed by
published opinion. Judge King wrote the opinion, in which
Chief Judge Traxler and Judge Wynn joined.

## COUNSEL

**ARGUED:** Gordon D. Kromberg, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for
the United States. Richard E. Gardiner, Fairfax, Virginia, for
Party in Interest. **ON BRIEF:** Neil H. MacBride, United
States Attorney, Karen Ledbetter Taylor, Assistant United
States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for the United States.

## OPINION

KING, Circuit Judge:

Following civil forfeiture proceedings in the Eastern District of Virginia, the government has appealed from the district court's post-judgment order of January 15, 2010,

reducing on Eighth Amendment grounds the forfeiture judgment from $79,650 to $50,000. *See United States v. $79,650.00 Seized from Bank of Am. Account Ending in 8247*, No. 1:08-cv-01233 (E.D. Va. Jan. 15, 2010) (the "Order").[1] Girma Afework, the claimant-party in interest, has cross-appealed, seeking relief from the court's judgment of December 8, 2009, ruling that he engaged in currency structuring, a federal offense warranting the forfeiture. *See United States v. $79,650.00 Seized from Bank of Am. Account Ending in 8247*, No. 1:08-cv-01233 (E.D. Va. Dec. 8, 2009) (the "Judgment").[2] As explained below, we reject Afework's cross-appeal (No. 10-1294) and affirm the court's determination that he committed multiple instances of currency structuring. With respect to the government's appeal (No. 10-1291), however, we conclude that the court misperceived the authorized penalty for purposes of its Eighth Amendment proportionality analysis, and thus vacate the Order and remand.

I.

A.

During 2006 and 2007, Girma Afework, an Ethiopian citizen residing in the Eastern District of Virginia, maintained bank accounts at PNC Bank and Bank of America. On April 2, 2007, Afework presented himself at a branch of PNC Bank in Fairfax, Virginia, intending to deposit $79,650 in cash (the "Defendant Money," or the "Money"). While there, Afework was told that a cash deposit of more than $10,000 would require, pursuant to an applicable banking regulation, the bank's completion of a form. To avoid having the bank complete the form, Afework deposited only $9900. He made another $9900 currency deposit later that same day at a Fairfax branch of Bank of America. Afework then deposited the

---

[1]The Order is found at J.A. 180. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2]The Judgment is found at J.A. 22.

balance of the Defendant Money by making similar cash deposits — one per day at each of the two banks — on April 3, 4, and 5, 2007. Afework thus engaged in eight separate currency transactions at the two banks, ranging in amount from $9900 to $9980, thereby managing to fully deposit the Money without causing the banks to file any forms. In April and May 2007, Afework consolidated the entirety of the Money into a single account at Bank of America.

### B.

On February 21, 2008, the Postal Inspectors executed a warrant for an arrest in rem, seizing the Defendant Money from Bank of America. Several months later, on November 26, 2008, the government filed its Complaint for forfeiture of the Money, pursuant to 31 U.S.C. § 5317(2), alleging that the currency deposits of the Money were illegally structured by Afework, in contravention of 31 U.S.C. § 5324.[3] On December 30, 2008, Afework asserted an interest in the Money, filing a claim pursuant to Rule G(5)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which provides that "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending."

The magistrate judge thereafter denied the parties' respective dispositive motions and, on December 8, 2009, conducted a bench trial.[4] The government called three trial witnesses:

---

[3]Section 5324 of Title 31, which is entitled "Structuring transactions to evade reporting requirement prohibited," provides in subsection (a)(3) that no person shall "structure or assist in structuring, or attempt to structure or assist in structuring, any [currency] transaction with one or more domestic financial institutions." Under § 5317(2), "[a]ny property involved in a violation of section [5324] may be seized and forfeited to the United States."

[4]On June 5, 2009, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to the exercise of jurisdiction by the magistrate judge. As a result, the relevant proceedings in the district court were handled and disposed of by the magistrate judge.

Secret Service Agents Scott McGuckin and Rodney Smith, plus Afework himself. Agent McGuckin testified regarding, inter alia, his analysis of Afework's bank accounts, and Agent Smith testified about his investigative interview of Afework concerning his currency transactions. Importantly, Agent Smith explained that Afework had previously engaged in similar currency structuring activities. More specifically, seven months prior to the activities on trial, on October 27, 2006, Afework had made three cash deposits, two of $9000 and one of $2000, at the same banks where he engaged in his April 2007 currency transactions. Afework acknowledged having discussions with the various bank tellers in April, and testified about the reporting requirements and the extent of his awareness that banks are obligated to report currency transactions in excess of $10,000. Because this forfeiture proceeding is civil in nature, the government was obliged to prove at trial the predicate § 5324 offenses by a preponderance of the evidence. *See United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (citing *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361-62 (1984)).

At the trial's conclusion, the magistrate judge ruled from the bench, first explaining that a § 5324 offense has three elements, which he identified as follows: (1) that "a person knowingly structured, attempted to structure, [or] assisted in structuring a currency transaction"; (2) that "the person knew of the domestic financial institution's legal obligation to report transactions in excess of $10,000"; and (3) that "the purpose of the structured transaction was to evade that reporting obligation." J.A. 104-05.[5] Relevant to this appeal, the

---

[5]The elements identified by the magistrate judge conform in substance with the Supreme Court's explanation of § 5324 in *Ratzlaf v. United States* that "[i]t is illegal to structure transactions . . . for the purpose of evading a financial institution's reporting requirement." 510 U.S. 135, 136 (1994). The magistrate judge did not explicitly address the *Ratzlaf* Court's imposition of the additional requirement that a violation of § 5324 be willful, that

judge found, as to the second of those elements, that "Afework knew of the domestic financial institution's legal obligation to report transactions in excess of $10,000." *Id.* at 114. The judge premised this finding primarily on Agent Smith's testimony that Afework had admitted knowing that "there was a . . . banking regulation form," *see id.* at 53, as well as Afework's own testimony, which (although contradictory) revealed his knowledge that the reporting form had to be completed pursuant to a banking regulation, *see id.* at 112.[6] Additionally, as to the third element, the judge found that, "because [Afework] had such knowledge and he continued to deposit these amounts over a period of time in less than $10,000[,] . . . [his] purpose . . . was . . . evading the reporting obligation by both PNC and Bank of America banks." *Id.* at 114-15. The judge thus ruled that the requirements of § 5324 were satisfied and that forfeiture of the Defendant Money was warranted. It then entered its Judgment of December 8, 2009, ordering that the United States recover the Money from Afework.

---

is, "the Government must prove that the defendant [here, claimant Afework] acted with knowledge that his conduct was unlawful." *Id.* at 137. Afework does not complain of any such omission, however, and, as explained below, the evidence was sufficient for the judge to find that Afework's conduct satisfied each and every element of a § 5324 offense.

[6]As the magistrate judge explained, Afework initially "said that the teller did not tell him that . . . the form was required by a banking regulation"; however, Afework later "changed his testimony . . . and said that the PNC teller told him it was a banking regulation." J.A. 112. Furthermore, the judge emphasized that Afework had no answer when asked why he had, after his first $9900 deposit on April 7, 2007, at PNC Bank, structured his second deposit of the day at Bank of America, though he had previously asserted his belief that each bank had its own rules and there was no reason for him to think that Bank of America had the same reporting rule as PNC Bank. *See id.* at 113.

## C.

During the trial, Afework had asserted that the Excessive Fines Clause of the Eighth Amendment barred forfeiture of the Money. *See* U.S. Const. amend. VIII (providing that "[e]xcessive bail shall not be required, nor excessive fines imposed"). The judge deferred ruling on the excessive fines issue pending briefing by the parties.

On December 18, 2009, ten days after the trial, Afework formally moved to dismiss the Judgment (the "Excessive Fines Motion"), contending that the $79,650 forfeiture was constitutionally excessive because that amount was disproportionate to the fine authorized under the Sentencing Guidelines. *See United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998) (requiring, for purposes of an excessive fines issue, that a proportionality analysis be conducted, assessing whether "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense"). The government responded that, in light of Afework's (uncharged) criminal activity and the maximum statutory fine for his offenses of currency structuring, forfeiture of the Money was not constitutionally excessive. More specifically, the government maintained that the Guidelines were no longer relevant to the *Bajakajian* proportionality analysis because of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Guidelines advisory. As such, the government asserted that a maximum statutory fine of $250,000 — rather than the advisory Guidelines fine — was the appropriate measuring stick for an excessive fines proportionality analysis.[7] The government also contended

---

[7]As discussed *infra*, the government now argues that the maximum statutory fine was miscalculated in the district court and that, pursuant to § 5324(d)(2) of Title 31, the maximum fine is $500,000 — which is the "Enhanced penalty for aggravated cases." The government also asserts that the Guidelines do not specify the fine for structuring offenses when the maximum statutory fine is more than $250,000.

that, even if the magistrate judge could properly look to the Guidelines, Afework's relevant conduct included his earlier structuring activities. In support of this contention, the government filed the affidavit of Agent Smith, who explained that Afework had structured $86,200 of currency deposits between October 2006 and February 2007.[8]

On January 15, 2010, the magistrate judge heard argument on the Excessive Fines Motion. Afework maintained, contrary to the government's assertions, that the Guidelines provided the appropriate benchmark for establishing the forfeiture amount and that his earlier structuring activities were not relevant to the Guidelines calculation. Afework thus contended that his offense level was only six, *see* USSG § 2S1.3 (2009), yielding an advisory Guidelines fine of up to $5000, *see id.* § 5E1.2. The government's position was vastly different — that the applicable fine was the statutory maximum, then thought to be $250,000, and that, in any event, the forfeiture Judgment was not constitutionally excessive even when compared to the fine authorized by the Guidelines. According to the government, the appropriate Guidelines offense level was either 20 or 22, each of which yields a maximum advisory fine of $75,000.

At the conclusion of the hearing, the magistrate judge ruled that the advisory Guidelines fine — and not the statutory maximum fine — provided the proper comparison for its Eighth Amendment proportionality analysis. The judge also found that Afework's earlier structuring activities (between

---

[8]In his affidavit, Agent Smith explained that Afework's previous structuring activities encompassed three other periods of currency deposits. In October 2006, Afework made three currency deposits, two of $9000 and one of $2000. Between December 2006 and January 2007, he made four currency deposits, three of $9000 and one of $1500. Finally, in February 2007, Afework made four additional currency deposits, ranging from $8500 to $9950. These eleven currency deposits were made at the same banks where Afework made the April 2007 deposits underlying the forfeiture.

October 2006 and February 2007) constituted relevant conduct and that the aggregate amount of structured currency deposits made by Afework exceeded $165,000. The judge then determined that the Guidelines offense level was 18, resulting in an advisory fine range of $6000 to $60,000. Predicated thereon, the court fixed the forfeiture amount at $50,000. Accordingly, the January 15, 2010 Order specified that "the forfeiture amount is reduced to a fine of $50,000, payable by [Afework] to the Government."[9] As heretofore explained, the government and Afework have filed separate notices of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

## A.

Turning to the merits, we first dispose of Afework's sole contention in his cross-appeal — that the government was required but failed to prove that he had actual knowledge of the banks' obligation to report currency transactions in excess of $10,000 to the government. Section 5313 of Title 31 obliges domestic financial institutions (e.g., PNC Bank and Bank of America) to report certain transactions to the Secretary of the Treasury, including currency transactions exceeding $10,000. *See* 31 C.F.R. § 103.22(b)(1) ("Each financial institution . . . shall file a report of each deposit . . . which involves a transaction in currency of more than $10,000."). Pursuant to the implementing regulations, such currency transactions are specifically reported to the Internal Revenue Service (the "IRS"). *See id.* § 103.27(a)(4). Afework asserts that, although he knew that these banks were obligated to report currency transactions in excess of $10,000, he believed

---

[9]Although the Order refers to a *fine* of $50,000 — rather than the *forfeiture* of that sum — a civil forfeiture is considered to be a punishment and, thus, constitutes a fine for purposes of an Eighth Amendment proportionality analysis. *See United States v. Austin*, 509 U.S. 602, 622 (1993).

that the reporting requirement stemmed from internal bank rules unique to PNC Bank and Bank of America. According to Afework, he did not know that the banks were obliged to report such transactions to the government — and the government failed to present sufficient evidence to prove otherwise.[10] Afework contends that, as a result, there was insufficient proof that he contravened 31 U.S.C. § 5324.

In assessing such a sufficiency challenge, we view the evidence in the light most favorable to the prosecution and determine whether "substantial evidence" supports the judgment. *See United States v. Jeffers*, 570 F.3d 557, 565 (4th Cir. 2009); *see also United States v. Whorley*, 550 F.3d 326, 338 (4th Cir. 2008) (defining "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient"). At trial, the magistrate judge was presented with testimony from both Agent Smith and Afework concerning Afework's knowledge that the banks were obligated to file the currency reporting forms pursuant to a banking regulation — a regulation which, contrary to some of Afework's assertions, was a government regulation and not unique to each bank. In making his factual findings the judge was entitled to make appropriate credibility determinations and to draw reasonable inferences from the trial testimony. Viewed in context, the totality of the evidence — and in particular the compelling evidence of prior structuring activities — was more than suf-

---

[10]Afework's opening appellate brief asserted that the United States was required to prove his knowledge that the currency reporting forms were to be filed "with the IRS." That position was refined in his reply brief, however, where Afework recognized that the United States only had to prove knowledge that the reporting forms were to be filed "with the government." Two potentially fatal hurdles arise therefrom — first, that his appellate contention was waived by not being properly presented in the opening brief, and, second, that Afework had admitted (in his opening brief) that there was sufficient proof of his knowledge that the reporting forms had to be filed with the government. We will proceed beyond those hurdles, however, and nevertheless assess the merits of Afework's sufficiency challenge as most recently refined.

ficient to justify the court's findings in support of the § 5324 offenses. We therefore reject Afework's cross-appeal and affirm the Judgment's determination, by a preponderance of the evidence, that he committed the offenses of currency structuring.

## B.

We turn finally to the government's appeal, by which it challenges the magistrate judge's Order reducing the forfeiture amount on Eighth Amendment grounds from $79,650 to $50,000. We review de novo whether a forfeiture of property contravenes the Excessive Fines Clause of the Eighth Amendment. *See United States v. Jalaram*, 599 F.3d 347, 351 (4th Cir. 2010). Significantly, the government contends that the judge erred in relying on the Guidelines for its Eighth Amendment proportionality analysis, because the fine table in Guidelines section 5E1.2 is simply inapplicable where — as here — the statutory maximum fine exceeds $250,000. *See* USSG § 5E1.2(c)(4) (2009) (explaining that fine table does not apply "if defendant is convicted under a statute authorizing . . . a maximum fine greater than $250,000").

Under § 3571(b)(3) of Title 18, "an individual who has been found guilty of an offense may be fined . . . for a felony, not more than $250,000." Pursuant to 31 U.S.C. § 5324(d)(2), however, the $250,000 maximum fine must be doubled under the aggravated facts of this case because

> [w]hoever violates [§ 5324] as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) . . . of section 3571.

As found by the magistrate judge in connection with the Order, Afework structured more than $100,000 (i.e., at least $165,000) in a twelve-month period (i.e., the seven-month period between October 2006 and April 2007). Accordingly,

this is an aggravated case under § 5324(d)(2), the statutory maximum fine was $500,000, and the fine table in section 5E1.2 of the Guidelines is inapplicable. The parties, however, did not recognize this legal point in the underlying proceedings and thus failed to alert the magistrate judge to his misapprehension of the applicable law.

As the Supreme Court explained in *Bajakajian*, a forfeiture of property will violate the Excessive Fines Clause only if it is "grossly disproportional" to the gravity of the offense. *See* 524 U.S. 321, 336 (1998); *see also United States v. Ahmad*, 213 F.3d 805, 815 (4th Cir. 2000) (recognizing that *Bajakajian* applies when determining "whether any punitive forfeiture — civil or criminal — is excessive"). A proper assessment of whether a specific forfeiture contravenes the Excessive Fines Clause typically requires an analysis of several factors. *See Jalaram*, 599 F.3d at 355-56. This appeal, however, turns on only one of those factors: "the amount of the forfeiture and its relationship to the authorized penalty." *Id.* at 355. As the government maintains, a legal error was made when the court predicated its proportionality analysis on an incorrect understanding that the authorized penalty was the Guidelines advisory fine of $60,000. Under the facts of this aggravated case, the correct authorized penalty is the statutory maximum fine of $500,000. As such, we are constrained to agree with the government that the magistrate judge's proportionality analysis was erroneously conducted. We therefore vacate the Order and remand for further proceedings.

### III.

Pursuant to the foregoing, we reject Afework's cross-appeal and affirm the Judgment of December 8, 2009. On the other hand, we vacate the Order of January 15, 2010, and remand for such other and further proceedings as may be appropriate.

No. 10-1291 *VACATED AND REMANDED*
No. 10-1294 *AFFIRMED*